34                    62 Mass. App. Ct. 34 (2004)

Pembroke Country Club, Inc. *v.* Regency Savings Bank, F.S.B.

PEMBROKE COUNTRY CLUB, INC. *vs.* REGENCY SAVINGS BANK, F.S.B.

No. 02-P-1683.

Plymouth. February 6, 2004. - September 15, 2004.

Present: LENK, COWIN, & KANTROWITZ, JJ.

*Unlawful Interference. Bank. Contract,* Loan. *Consumer Protection Act,* Unfair act or practice, Unfair or deceptive act.

The evidence at the trial of a civil complaint was insufficient to support either a finding of tortious interference with an advantageous business relationship or a finding of a violation of G. L. c. 93A on the part of the defendant, a member of a consortium of banks that lent money to the plaintiff, where the defendant's resistance to being compelled to discount a loan that it believed would otherwise be paid in full was the legitimate advancement of its own economic interest and was not improper, and where the defendant employed no improper means to achieve its objective of obtaining full payment of the loan. [38-41]

CIVIL ACTION commenced in the Superior Court Department on August 18, 1999.

The case was tried before *Charles J. Hely*, J.

*Richard J. Fallon* for the plaintiff.

*Nicholas M. Kelley* (*Hugh Balsam*, of Illinois, with him) for the defendant.

COWIN, J. The plaintiff, a borrower pursuant to a lending agreement entered into by various participating banks, sought to negotiate a discounted payoff of the loan, but was frustrated in its effort by the actions of the defendant, a member of the bank consortium. The plaintiff commenced an action in several counts.[1] A Superior Court jury returned a verdict in the plaintiff's favor on a count for tortious interference with an advantageous business relationship, awarding the plaintiff dam-

---

[1] A complete description of the complaint and relevant trial and posttrial proceedings appears below.

ages of $170,000. The jury also returned an advisory verdict that the defendant had violated the provisions of G. L. c. 93A and that the violation was wilful or knowing. See G. L. c. 93A, § 11. The judge adopted that verdict to the extent that the jury found there to have been a G. L. c. 93A violation, but declined to adopt the finding that the violation had been wilful or knowing.[2] Both parties appealed.

The plaintiff asserts that, given the evidence, it was error for the judge not to conclude that the defendant's c. 93A violation was wilful or knowing. On its part, the defendant argues that the jury could not permissibly find that the defendant had tortiously interfered with the plaintiff's advantageous business relationship and that, therefore, the defendant's motion for judgment notwithstanding the verdict on that count should have been allowed. The defendant contends also that the judge's finding in favor of the plaintiff on the c. 93A count was error. We conclude that the evidence was insufficient to support either a finding of tortious interference or a finding of a violation of G. L. c. 93A on the part of the defendant and accordingly reverse the judgment.

1. *Background.* The jury could permissibly have found the following material facts. In 1991, the plaintiff became obligated as borrower on a restructured, secured loan in the principal amount of $2 million. The lender was a consortium of nine banks headed by Southstate Bank. The banks entered into a "participation agreement" among themselves regarding the syndication and management of the loan. Pursuant to that agreement, Southstate Bank, which had provided 32.71 percent of the loan amount, was designated the "Lender." The participation agreement expressly provides that the borrower shall deal only with the lender (i.e., Southstate Bank) with respect to the loan.

By 1997, the Federal Deposit Insurance Corporation (FDIC) had succeeded to Southstate Bank's interest with respect both to its percentage of the loan and its position as lender under the participation agreement. The plaintiff, having obtained a commitment for more favorable financing from another bank, approached the FDIC in an attempt to negotiate a discounted

---

[2]Thus, the c. 93A finding entitled the plaintiff to an award of attorney's fees and expenses, but damages were not multiplied.

payoff of the existing loan from the consortium. Because the FDIC was then about to sell its interest in that loan, it indicated that discussions should be suspended until that transaction had been completed and a new lender could deal with the issue pursuant to the participation agreement.

Apparently unwilling to await that development, the plaintiff contacted other members of the consortium and was able to convince members holding more than fifty-one percent of the interests in the loan to accept a payoff $170,000 less than the total amount owed. The participation agreement authorizes members holding such a fraction of the loan interests to bind the remainder with respect to such a negotiated settlement; accordingly, these members notified the FDIC as lender that there was an agreement on the part of more than fifty-one percent of the participating interests to accept the discounted amount and directed the FDIC to implement the understanding.[3]

Unaware of the pending arrangement to accept a discounted payment, the defendant acquired from the FDIC the interests in the loan previously held by Southstate Bank and another member of the consortium. Consequently, the defendant succeeded the FDIC as the lender for purposes of implementation of the participation agreement. Upon reviewing the status of the loan and the decision to accept less than full payment, the defendant determined that the loan was both performing and fully secured and that there was no reason to agree to a payoff of less than what was owed. The defendant forthwith sent written notice to counsel for the other loan participants that it did not consent to the discounted payoff, citing a policy "not [to] accept discounted payoffs on loans which we deem to be fully collectable."

Shortly thereafter, the defendant wrote again to the loan participants. At this time, the defendant stated that it had assumed the position of lender under the participation agreement

---

[3]The defendant questions whether there actually was an agreement of more than fifty-one percent of the participating interests by virtue of the fact that one member conditioned its agreement on its receipt of an additional $10,000, thereby apparently violating a provision of the participation agreement that required that members be paid only in accordance with their percentages. Because our decision does not turn on a resolution of this issue, we do not explore it further.

and that it would exercise its right pursuant to that agreement to be the exclusive entity to deal with the plaintiff on behalf of the consortium. It advised the other members that any other negotiations with the plaintiff were to cease immediately. The letter also repeated the defendant's view that the loan to the plaintiff should not be discounted and offered to purchase the interest of any other member for the amount the plaintiff would pay to that member if the agreement the plaintiff sought were performed.

Pursuant to this offer, the defendant purchased the interests of certain other members, eventually owning approximately eighty percent of the loan. Neither the defendant nor the remaining participants altered their view that the loan should be paid in full. The plaintiff did so upon the closing of its refinancing, thereby paying $170,000 more than it would have paid had its earlier agreement with the holders of a majority of the loan interests been consummated.

The plaintiff thereupon filed in the Superior Court a five-count complaint alleging breach of contract (count I); breach of the implied covenant of good faith and fair dealing (count II); tortious interference with a contractual relationship (count III); estoppel and unjust enrichment (count IV); and violation of G. L. c. 93A (count V). The trial judge directed verdicts in favor of the defendant on counts I, II, and IV on the ground that the evidence demonstrated conclusively that the plaintiff was not a party to any agreement or understanding.[4] He denied the defendant's motion for a directed verdict on count III, the tortious interference count, but altered the claim to one for interference with an advantageous business relationship (the evidence having established that no contract to which the plaintiff was a party had been created). In addition, the judge sent to the jury the question whether the plaintiff, while not a party to the participation agreement itself, was instead a third-party beneficiary entitled to recover for the breach of that agreement. Finally, the judge submitted count V (the G. L. c. 93A count) to the jury for an advisory opinion. See *Whitehall Co.* v. *Barletta,* 404 Mass. 497, 499 & n.6 (1989).

The jury returned verdicts in favor of the plaintiff on the tor-

---

[4]The plaintiff has not appealed from the judgment on these counts.

tious interference and third-party beneficiary claims, awarding damages of $170,000. They also returned an advisory verdict that the defendant had violated G. L. c. 93A, that the violation was wilful or knowing, and that the plaintiff should receive double damages. On motion, the judge entered judgment notwithstanding the verdict in favor of the defendant on the third-party beneficiary claim.[5] He denied relief with respect to the tortious interference verdict and adopted the jury's advisory verdict that found a violation of G. L. c. 93A (disregarding the jury's view that the violation was wilful or knowing).[6] These appeals followed.

2. *Discussion.* The elements of a case of tortious interference with an advantageous business relationship[7] are by now firmly established. The plaintiff has the burden of demonstrating that a business relationship from which the plaintiff might benefit existed; the defendant knew of the relationship; the defendant intentionally interfered with the relationship for an improper purpose or by improper means; and the plaintiff was damaged by that interference. See *United Truck Leasing Corp.* v. *Geltman,* 406 Mass. 811, 812, 815-817 (1990); *Swanset Dev. Corp.* v. *Taunton,* 423 Mass. 390, 397 (1996). Tortious interference has become the "tort du jour" in the world of commercial litigation; that increases the importance of distinguishing truly inappropriate behavior for which there should be a remedy from normal competitive behavior permissible in the marketplace. The judgment usually turns on whether the plaintiff succeeds in demonstrating that the defendant has acted with an improper motive or in an improper manner, and this case is no exception.[8]

The evidence establishes neither the existence of an improper purpose nor the employment of improper means on the part of

---

[5]The plaintiff has not appealed from this portion of the judgment.

[6]The judge also denied the defendant's motion to amend the judgment because it allegedly included a duplicative interest component. The defendant has not appealed from this order.

[7]The requirements are the same as those applicable to interference with a contractual relationship.

[8]Thus, we pass certain of the defendant's arguments, specifically, that the defendant could not interfere with its own business relationship, see *Riseman* v. *Orion Research Inc.,* 394 Mass. 311, 314 (1985), and that the plaintiff's relationship with the bank consortium was unsupported by consideration, as unnecessary to address in light of our decision.

the defendant. Indeed, the judge recognized that it was "a close question" with respect to the sufficiency of the evidence on this claim. With respect to the defendant's motive for attempting to halt the proposed settlement, the plaintiff has demonstrated only that the defendant resisted being compelled to discount a loan that it believed would otherwise be paid in full. Because the defendant's purpose was the legitimate advancement of its own economic interest, that motive is not "improper" for purposes of a tortious interference claim. See *Hunneman Real Estate Corp.* v. *Norwood Realty, Inc.*, 54 Mass. App. Ct. 416, 428-429 (2002). That the plaintiff may have suffered a loss as a consequence of the defendant's pursuit of its own interest is a by-product of a competitive marketplace; it does not render the defendant's effort tortious.

Likewise, we discern no evidentiary basis for a finding that the defendant employed improper means to achieve its objective of obtaining full payment of the loan. The plaintiff challenges the defendant's actions in several respects, and we address the contentions individually. The plaintiff argues first that the defendant got its own way by breaching the provision of the participation agreement that bound it as lender to proceed in accordance with a course of action agreed on by fifty-one percent or more of the loan interests. Thus, the argument continues, the breach of the participation agreement constitutes the improper means which support a case of tortious interference.

We need not decide on this record whether breach of a contract by itself makes out the "improper means" element of tortious interference because there was no evidence that the defendant in fact breached this particular agreement. We find nothing either in the purpose or the language of the participation agreement that precludes the lender from attempting to persuade other members to abandon a proposed settlement. That the defendant used financial incentives to induce cooperation by certain of the members is not, in these circumstances, evidence of a breach of the agreement. Had the holders of fifty-one percent or more of the interests held fast to their intention to settle with the plaintiff, the defendant would have had no choice but to comply. The evidence, however, is otherwise. Some members who had previously indicated their assent to a settle-

ment with the plaintiff were apparently perfectly willing to accede to the urging of the defendant not to accommodate the plaintiff's request for a discount. Other members acceded to the defendant's offer to be bought out by the defendant for the price the plaintiff had offered. This is hardly the stuff of a breach of contract, and we see no basis therein for a finding that the defendant employed any means that were improper.[9]

We are not persuaded by various objections of the plaintiff to specific actions taken by the defendant in the course of attempting to recover the full amount of its loan. The defendant's reference to its policy not to grant discounts on loans that were performing and fully secured was accurate; it could not reasonably have misled others that a bank would have such a policy. That the defendant did not refer to a particular provision of the participation agreement, or seek further guidance regarding the meaning of that agreement, is of no consequence in the light of our conclusion that the defendant committed no breach.

We also see no tortious interference arising from the defendant's cease and desist letter to the members of the consortium. Having succeeded to the position of lender, the defendant was entitled by the terms of the participation agreement to be the only consortium member to negotiate with the plaintiff. The defendant's letter demanding that members cease further negotiations was a permissible means of enforcing that provision. The assertion by a party of its legal rights is not "improper means" for purposes of a tortious interference claim. The plaintiff suggests that the letter contained an implied "threat," and was improper for that reason. We suppose that implicit in any demand to cease and desist is a message that a refusal to comply voluntarily may be countered by litigation. Given that such litigation would be in the service of that party's legal rights, we see nothing improper in such a communication.

With respect to the plaintiff's claim under G. L. c. 93A, § 11, we conclude that it is wholly derivative of the tortious interfer-

---

[9]Our conclusion that the defendant did not breach the participation agreement makes it unnecessary to consider the defendant's alternative argument that it was not required to abide by a settlement vote of a simple majority of the loan interests. We also pass the question whether the plaintiff had standing to enforce the participation agreement as an intended beneficiary, a question resolved in the negative by the judge with no appeal by the plaintiff.

ence claim. On this record, the evidence being insufficient to establish improper motive or improper means on the part of the defendant, it is likewise insufficient to establish an unfair method of competition or an unfair or deceptive act or practice.[10]

3. *Disposition.* The judgments on counts III and V of the complaint are reversed. Judgments for the defendant shall enter thereon. The remaining judgments are affirmed.

*So ordered.*

---

[10]Given this conclusion, it is obviously unnecessary to consider the judge's determination that the defendant's actions were not wilful or knowing.