**Joseph MOORE, d/b/a CNT Deliveries, et al.**

v.

**LA–Z–BOY, INC. et al.**

**Civil Action No. 07–CV–10708–RGS.**

United States District Court, D. Massachusetts.

July 31, 2009.

Philip M. Giordano, Reed & Giordano, P.A., Boston, MA, for Joseph Moore, et al.

Jeffrey S. King, William G. Potter, K & L Gates LLP, Kalun Lee, Foley Hoag LLP, Boston, MA, for La–Z–Boy, Inc. et al.

## *MEMORANDUM AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*

STEARNS, District Judge.

On December 20, 2006, four furniture delivery companies, Joseph P. Moore, d/b/a CNT Deliveries; James Hembrough, d/b/a J & L Deliveries; Richard P. Garvey, d/b/a R & J Deliveries; and Stephen Dole, d/b/a ASC Deliveries, filed this lawsuit against La–Z–Boy, Inc.; La–Z–Boy Furniture Galleries of Boston (collectively the La–Z–Boy defendants); Home Furnishings Services, Inc. (HFS); Carl Harz Furniture Inc. (a/k/a Carl Harz Furniture Co., Inc.

and Carl Harz Fine Furniture); and Nicolas Harz.[1]

On June 26, 2007, the court dismissed the original Complaint for failure to plead the essential elements of a contract. Plaintiffs subsequently filed an Amended Complaint, which the court allowed to proceed despite the defendants' second motion to dismiss.[2] Presently before the court is defendants' motion for summary judgment.

## BACKGROUND

La–Z–Boy has a galaxy of furniture stores in Massachusetts doing business under the umbrella of LZB Furniture Galleries of Boston, Inc. The plaintiffs, all of whom are full-time employees of the Massachusetts Bay Transportation Authority, delivered furniture to La–Z–Boy customers in Massachusetts for a number of years in their spare time. Moore was the first of the four men to become involved, making deliveries for an entity known as Jud–Mar, a La–Z–Boy licensee, beginning in 1995. Jud–Mar was owned by Robert Hurwitz. Hembrough followed, also working for Jud–Mar. Jud–Mar was subsequently purchased by another La–Z–Boy licensee, Massachusetts Furniture Corporation (MFC), which was owned by Henry Siegel. MFC continued to employ Moore and Hembrough. Plaintiff Garvey began working for MFC in 1999, and plaintiff Dole in 2000. La–Z–Boy purchased MFC in 2002, and at some point, Siegel became General Manager of La–Z–Boy's Massachusetts operations.

All of the plaintiffs continued to make deliveries for La–Z–Boy and, as Moore testified at his deposition, renegotiated their payment schedules with Siegel from time to time. Siegel, however, was fired by La–Z–Boy sometime in 2005. On November 11, 2005, George Gikas, who had replaced Siegel, held a meeting attended by Moore, Hembrough, and Garvey. According to the notes of the meeting taken by Hembrough, Gikas promised plaintiffs that they were "secure in our positions, barring any catastrophes," and that they would be placed on a "3 yr. contract standard so we can take to a bank + upgrade equipment to Lazyboys [sic] needs." Plaintiffs, however, never received a three-year contract. Instead, in February of 2006, La–Z–Boy closed its Massachusetts warehouse, and told plaintiffs that their services were no longer needed. Plaintiffs were replaced by defendant HFS, a New Jersey-based company with a "demountable" truck system operating out of a Delaware warehouse.[3]

---

1. The original Complaint, which was filed in Middlesex Superior Court, was removed to this court on April 12, 2007, on diversity grounds. It asserted claims against all defendants for breach of contract, breach of the covenant of good faith and fair dealing, interference with contractual and advantageous business relations, fraud and deceit, negligent misrepresentation, negligence, gross negligence, civil conspiracy, violations of the Massachusetts Antitrust Act, Mass. Gen. Laws ch. 93, and of Mass. Gen. Laws ch. 93A.

2. In addition to all of the claims asserted in the original Complaint (except the state antitrust claims), the Amended Complaint contains new claims for promissory estoppel/detrimental reliance and unjust enrichment. In ruling on defendants' second motion to dismiss, the court held that "under the forgiving standard of Rule 12(b)(6), these factual allegations are sufficient to plead (however thinly) the existence of the essential terms of a contract.... While La–Z–Boy raises serious doubts as to the ultimate sustainability of plaintiffs' claims, these doubts are better resolved on a developed record." Memorandum and Order on Defendants' Motion to Dismiss, May 30, 2008, at 6, 2008 WL 2247146. The result might perhaps have been different if *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), had then been decided.

3. When La–Z–Boy attempted to hire plaintiffs for deliveries outside of Massachusetts on an as-needed basis, plaintiffs "rejected this

This litigation followed. At the core of the motion for summary judgment is the dispute over whether an enforceable contract (or contracts) was ever formed between plaintiffs and La–Z–Boy (or any of its licensees).

## DISCUSSION

1. *Breach of Contract and Covenant of Good Faith and Fair Dealing— (Counts I–VIII)*

■ Plaintiffs have the burden of proving the existence of a contract. *Canney v. New England Tel. & Tel. Co.*, 353 Mass. 158, 164, 228 N.E.2d 723 (1967). "All the essential terms of a contract must be [sufficiently] definite and certain so that the intention of the parties may be discovered, the nature and extent of their obligations ascertained, and their rights determined." *Cygan v. Megathlin*, 326 Mass. 732, 733–734, 96 N.E.2d 702 (1951). *See also Situation Mgmt. Sys., Inc. v. Malouf, Inc.*, 430 Mass. 875, 878, 724 N.E.2d 699 (2000) ("It is axiomatic that to create an enforceable contract, there must be an agreement between the parties on the material terms of that contract, and the parties must have a present intention to be bound by that agreement."). Whether a purported contract contains the necessary elements for enforceability is (ordinarily) a question of law reserved for the court. *Schwanbeck v. Federal–Mogul Corp.*, 412 Mass. 703, 709, 592 N.E.2d 1289 (1992).

■ Despite being given the opportunity to amend their Complaint and conduct discovery, plaintiffs have failed to show that they had any kind of binding contract with La–Z–Boy, much less the aspirational agreement that they wish they had been given.[4] Virtually the only document upon which plaintiffs rely to prove a contractual relationship is a La–Z–Boy delivery list that sets out: (1) prices and special charges for delivery ($25.00 for delivery of a chair, and $35 per local delivery of a sofa; with extra charges for removal of old furniture, etc.); and (2) delivery times (9:00 am to 9:00 pm on weekdays, 7:00 am to 9:00 pm on weekends).

There is no allegation that defendants breached this supposed "contract" by failing to pay the agreed-upon delivery charges, or by requiring plaintiffs to make deliveries at unscheduled times. Rather, plaintiffs characterize the defendants' hiring of HFS in their stead as a "breach." The argument is, of course, circular as it supposes the existence of a contract. However, the delivery list contains none of the indicia of a contract. There is no direct or indirect acknowledgment of the list as constituting a contract, no mention of terms of duration, rights of termination, exclusivity, or even the identity of the supposed parties to the agreement. The list is not signed by any plaintiff, nor is it signed or endorsed by any La–Z–Boy representative.

■ "It is not required that all terms of the agreement be precisely specified, and

---

crumb of business as tossed aside to them from the defendants." Amended Complaint, ¶ 104.

4. Plaintiffs contend that the motion for summary judgment should be denied, or the ruling deferred pursuant to Fed.R.Civ.P. 56(f), because certain documents (such as Gikas's notes and materials related to the relationship between La–Z–Boy and HFS) have not been produced. The court notes that had plaintiffs pursued this discovery in accordance with the agreed-upon scheduling order endorsed by the court, they would likely possess the documents that they now complain are lacking. The court has denied two motions to compel production of this desired discovery because plaintiffs' requests were blatantly untimely. *See Rosario–Diaz v. Gonzalez*, 140 F.3d 312, 315 (1st Cir.1998).

the presence of undefined or unspecified terms will not necessarily preclude the formation of a binding contract." *Situation Mgmt. Sys., Inc.*, 430 Mass. at 878, 724 N.E.2d 699. However, the parties must "have progressed beyond the stage of 'imperfect negotiation.'" *Id.*, quoting *Lafayette Place Assocs. v. Boston Redev. Auth.*, 427 Mass. 509, 517–518 & n. 9, 694 N.E.2d 820 (1998). Plaintiffs make the puzzling argument that the time frame (duration) of the alleged contract is evidenced by a La–Z–Boy memorandum circulated to employees in March of 2005, stating that "this method [of scheduling deliveries] has been in use now since 1997. It works." While the statement indicates that the parties at one time had a successful relationship, nothing in it binds La–Z–Boy (or plaintiffs) to its indefinite continuation. Plaintiffs themselves are in complete disarray on the issue. At deposition, Hembrough testified that he "believe[d]" that the duration of the agreement was three years, while Moore felt that it was "as long as we wanted to keep going," and Garvey, for his part, "expected it to go on forever." [5]

Similarly, while plaintiffs claim that the purported agreement gave them the exclusive right to deliver La–Z–Boy furniture, they offer no facts in support of their thesis. They point only to the same March of 2005 La–Z–Boy memorandum, which states: "Basically, we have 7 days in a week and 4 delivery companies." The court is baffled as to how this statement can be interpreted to mean that La–Z–Boy had obligated itself to an exclusive relationship with the plaintiffs. Simply put, [t]he difficulty here is that the [agreement] sued on is silent as to material matters important in its interpretation for the ascertainment of the obligations of the parties and the evidence of the circumstances surrounding its making is not such as to permit by inference the supplying of the lack. Many of the essential terms necessarily involved in the proposed undertaking are not set forth and without them no enforceable contract is shown.

*Geo. W. Wilcox, Inc. v. Shell E. Petroleum Prods., Inc.*, 283 Mass. 383, 390, 186 N.E. 562 (1933) (citation omitted).

While in some cases, it is appropriate for the court to supply a missing term negotiated by the parties, but mistakenly omitted from their agreement, it may do so only when the terms of the contract are otherwise unambiguous. *Diamond Crystal Brands, Inc. v. Backleaf, LLC*, 60 Mass.App.Ct. 502, 505–506, 803 N.E.2d 744 (2004). If there is no contract, there can be no missing term for the court to insert. "Construction and enforcement of the agreement without these essential terms [duration, rights of termination, exclusivity] would be futile, and [the court] cannot supply these provisions without writing a contract for the parties which they themselves did not make." *Held v. Zamparelli*, 13 Mass.App.Ct. 957, 958, 431 N.E.2d 961 (1982) (internal citation omitted).[6]

---

**5.** Where an agreement fails to specify a term of duration, the contract will be construed as one "terminable at will by either party upon reasonable notice." *Mass Cash Register, Inc. v. Comtrex Sys. Corp.*, 901 F.Supp. 404, 417 (D.Mass.1995). This rule also applies in the employment and service context. "As a general rule, where an employment contract, be it express or implied, contains no definite period of employment, it establishes employment at will. Employment at will is terminable by either the employee or the employer without notice, for almost any reason or for no reason at all." *Jackson v. Action for Boston Cmty. Dev., Inc.*, 403 Mass. 8, 9, 525 N.E.2d 411 (1988) (internal citation omitted).

**6.** To the extent that plaintiffs argue that they had a lifetime contract, they have failed to show that Hurwitz or Siegel had the authority

Plaintiffs' additional argument, that Gikas's oral promise to seek a three-year contract for their benefit has contractual force, also fails. Hembrough's notes of the meeting state only that Gikas will "get us on a 3 yr. contract standard." Amended Complaint, ¶ 74, Ex. F. An agreement to negotiate, however, does not create a binding contract. *See Bell v. B.F. Goodrich Co.*, 359 Mass. 763, 763, 270 N.E.2d 926 (1971). "An agreement to reach an agreement is a contradiction in terms and imposes no obligation on the parties thereto." *Rosenfield v. U.S. Trust Co.*, 290 Mass. 210, 217, 195 N.E. 323 (1935). *See also Lucey v. Hero Int'l Corp.*, 361 Mass. 569, 574–575, 281 N.E.2d 266 (1972) ("An agreement to enter into a contract which leaves the terms of the contract for future negotiation is too indefinite to be enforced.").

Because there was no contract, plaintiffs' claim of a breach of the covenant of good faith and fair dealing also necessarily fails. *Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 471, 583 N.E.2d 806 (1991). While "[e]very contract implies good faith and fair dealing between the parties to it," *Warner Ins. Co. v. Comm'r of Ins.*, 406 Mass. 354, 362 n. 9, 548 N.E.2d 188 (1990), "[t]he duty of good faith and fair dealing concerns the manner of performance," and not the existence vel non of the contract. *Uno Restaurants, Inc. v. Boston Kenmore Realty Corp.*, 441 Mass. 376, 385, 805 N.E.2d 957 (2004). "The covenant may not . . . be invoked to create rights and duties not otherwise provided for in an existing contractual relationship, as the purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance." *Id. See also Mass. Eye and Ear Infirmary*

v. *QLT Phototherapeutics, Inc.*, 412 F.3d 215, 229 (1st Cir.2005). Because plaintiffs have failed to prove the existence of a contract, the motion for summary judgment will be *ALLOWED* as to Counts I through VIII.

### 2. *Promissory Estoppel (Counts XIV–XVI)*

Plaintiffs' claim of promissory estoppel and detrimental reliance also fails. A plaintiff is entitled to recover under this theory if "(1) a promisor makes a promise which he should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee, (2) the promise does induce such action or forbearance, and (3) injustice can be avoided only by enforcement of the promise." *Loranger Constr. Corp. v. E.F. Hauserman Co.*, 6 Mass.App. Ct. 152, 154, 374 N.E.2d 306 (1978), *aff'd*, 376 Mass. 757, 384 N.E.2d 176 (1978). In order to establish the existence of an enforceable promise, "the plaintiff must show that the defendants' promise included enough essential terms so that a contract including them would be capable of being enforced." *Armstrong v. Rohm & Haas Co., Inc.*, 349 F.Supp.2d 71, 82 (D.Mass. 2004). "In the case of a contract formed by reliance, the putative promise must not only be definite and certain in its terms, but also must be one that the promisor, expecting to be legally bound by it, intends as a firm commitment. It may not be simply an expression of present intention, or a statement that merely gives rise to hope or expectation on the part of the promisee." *Kiely v. Raytheon Co.*, 914 F.Supp. 708, 712 (D.Mass.1996) (internal citation omitted).

---

to bind La–Z–Boy to an extraordinary contract of a type hardly known (outside of marriage) to the law. *See Boothby v. Texon, Inc.*, 414 Mass. 468, 478, 608 N.E.2d 1028 (1993).

Putting aside the issue of whether any definite promise was even made by defendants, plaintiffs have failed to adequately plead reliance. They uniformly admit that they did not purchase any equipment as a result of the November meeting with Gikas, or make any substantial changes in their business operations. Nor did they reject any other job opportunities to continue working for La–Z–Boy. Therefore, the motion will be *ALLOWED* as to Counts XIV through XVI.

### 3. *Tortious Interference (Counts IX–XIII)*

To make out a claim of tortious interference, "[a] plaintiff must prove that: (1) he had a contract with a third party; (2) the defendant knowingly induced the third party to break that contract; (3) the defendant's interference, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions." *G.S. Enters., Inc. v. Falmouth Marine, Inc.*, 410 Mass. 262, 272, 571 N.E.2d 1363 (1991). Putting aside the inability of plaintiffs to show the existence of a contract, there is no showing of an improper motive or means on defendants' part. Plaintiffs simply complain that Harz, HFS, and/or CHF courted La–Z–Boy's Massachusetts delivery business by extolling the virtues of their demountable truck system. The court is at a loss as to how perfectly acceptable competitive conduct can be deemed improper. As the Appeals Court has aptly observed, "[t]ortious interference has become the 'tort du jour' in the world of commercial litigation; that increases the importance of distinguishing truly inappropriate behavior for which there should be a remedy from normal competitive behavior permissible in the marketplace." *Pembroke Country Club, Inc. v. Regency Sav. Bank, F.S.B.,*

62 Mass.App.Ct. 34, 38, 815 N.E.2d 241 (2004).

Plaintiffs additionally complain that Harz and HFS interfered with Moore's relationship with his employee, Phillip Woods, by luring Woods away with the offer of a driving job. Plaintiffs allege that Harz and HFS caused Woods to breach his duty of loyalty to Moore by requesting that Woods keep the offer confidential. However, in this post-serfdom era,

> [a]n at-will employee may properly plan to go into competition with his employer and may take active steps to do so while still employed. Such an employee has no general duty to disclose his plans to his employer, and generally he may secretly join other employees in the endeavor without violating any duty to his employer. The general policy considerations are that at-will employees should be allowed to change employers freely and competition should be encouraged. If an employer wishes to restrict the post-employment competitive activities of a key employee, it may seek that goal through a non-competition agreement.

*Augat, Inc. v. Aegis, Inc.*, 409 Mass. 165, 172, 565 N.E.2d 415 (1991) (internal citations omitted). Plaintiffs have not produced a written non-competition agreement signed by Woods or for that matter, any evidence contradicting Harz's statement that it was Woods who approached him seeking to change employment, rather than vice-versa.[7] The motion will therefore be *ALLOWED* as to Counts IX through XIII.

### 4. *Unjust Enrichment (Count XVIII)*

To sustain a claim for unjust enrichment, plaintiffs must show "(1) an enrichment, (2) an impoverishment, (3) a

---

7. Tellingly, plaintiffs did not seek to take any discovery from Woods.

relation between the enrichment and the impoverishment, (4) the absence of justification and (5) the absence of a remedy provided by law." *In re Lupron Mktg. and Sales Practices Litig.*, 295 F.Supp.2d 148, 182 (D.Mass.2003) (citations omitted). As to this claim, plaintiffs allege that Harz and HFS were unjustly enriched by absorbing plaintiffs' "proprietary" transportation system. Plaintiffs, however, have not shown that they had any proprietary interest (or how they could plausibly have acquired one) in the delivery routes, schedules, and prices established by La–Z–Boy, or any obligation on La–Z–Boy's part to keep this information confidential. As the true "owner" of the delivery schedules and prices, one would reasonably believe that La–Z–Boy was free to publish the information to whomever it chose. In any event, Harz testified that he did not acquire the information from La–Z–Boy, or even want it, as it would have been useless to him given the fact that Harz's trucks were coming from Delaware, and not Massachusetts, on two routes, rather than plaintiffs' twenty.[8] Plaintiffs have presented no evidence to the contrary. The motion will be *ALLOWED* as to Count XVIII.

### 5. *Fraud (Counts XIX and XX)*

 To sustain a claim for fraud, plaintiffs must show that (1) defendants made a false representation of material fact, (2) with knowledge of its falsity, (3) for the purpose of inducing plaintiffs to act in reliance thereon, (4) plaintiffs relied upon the representation, and (5) plaintiffs acted to their detriment. *Armstrong*, 349 F.Supp.2d at 81. At his deposition, Gikas testified that he intentionally withheld the fact that HFS would take over the delivery services in February of 2006, to insure that

plaintiffs would continue making deliveries for the Stoughton store opening on December 9, 2005, and through the holiday season. Even assuming that Gikas made false representations of his intention to replace plaintiffs as deliverymen, they have failed to demonstrate that they relied upon his statements to their detriment. Plaintiffs have also not identified any statements attributed to Harz, HFS, and/or CHF that are alleged to have been false or misleading. The motion will therefore be *ALLOWED* as to Counts XIX and XX.

### 6. *Chapter 93A (Count XXI)*

Chapter 93A provides relief in the nature of an equitable remedy, which is an issue for the court to decide. "Although whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact ... the boundaries of what may qualify for consideration as a G.L. c. 93A violation is a question of law." *R.W. Granger & Sons, Inc. v. J & S Insulation, Inc.*, 435 Mass. 66, 73, 754 N.E.2d 668 (2001) (citation omitted). The court finds nothing in this case but a mundane (though unfortunate for plaintiffs) loss of a business relationship to a more attractive (from La–Z–Boy's point-of-view) competitor. The motion will therefore be *ALLOWED* as to Count XXI.

### 7. *Civil Conspiracy (Count XXII)*

A plaintiff may allege one of two types of civil conspiracy. The first type requires proof of coercion; the second requires proof of a common plan to commit a tortious act. *See Kurker v. Hill*, 44 Mass. App.Ct. 184, 188–189, 689 N.E.2d 833 (1998). Under the first branch of civil conspiracy, a plaintiff must allege that a

---

**8.** Plaintiffs state that Harz testified at his deposition that Gikas had emailed him a "zip code analysis" in preparation of a pricing structure for the Boston area. The significance of this "fact" is a mystery to the court.

defendant and other parties combined to exert a special coercive power that they could not otherwise exercise individually. *See Aetna Cas. Sur. Co. v. P & B Autobody,* 43 F.3d 1546, 1564 (1st Cir.1994). This branch plaintiffs have not pled.

To state a claim for the second type of conspiracy, a plaintiff must allege "first, a common design or agreement, although not necessarily express, between two or more persons to do a wrongful act and, second, proof of some tortious act in furtherance of the agreement." *Id.* Because the court has found that defendants did not engage in tortious conduct, the claim for civil conspiracy necessarily fails. The motion will therefore be *ALLOWED* as to Count XXII.

### ORDER

For the foregoing reasons, the defendants' motion for summary judgment will be *ALLOWED.* The Clerk will enter judgment in favor of defendants on all Counts of the Amended Complaint, and close the case.

SO ORDERED.