Gem Plumbing and Heating Services, LLC, bought a similar business called Rusty’s, Inc., from Michael Roderick and Thomas Hansen. Two weeks after the closing Gem fired Roderick and Hansen, claiming that they knew but did not disclose that their employees Michael Hansen (the son of Tom Hansen) and Paul Neary were running a competing HVAC business called Air Pros MA, LLC. This lawsuit followed.
Gem claims that the Rusty’s Defendants (Rusty’s, Roderick, and Tom Hansen) were required but failed to disclose that Air Pros was competing with Rusty’s and that they thereby committed fraud, breached the parties’ Asset Purchase Agreement (the “APA”), committed an unfair or deceptive trade practice in violation of G.L. c. 93A, and engaged in civil conspiracy. It also claims that Roderick and Hansen thereby breached their fiduciary duties after becoming Gem employees. The Rusty’s Defendants assert a number of counterclaims.
The Rusty’s Defendants have moved for summary judgment on Gem’s remaining claims against them and on their counterclaims. Gem settled and has dismissed its claims against the other three defendants.
The summary judgment record establishes that the Rusty’s Defendants are entitled to judgment in their favor as a matter of law on all of Gem’s remaining claims against them. Roderick and Hansen are entitled to partial summary judgment as to liability on their counterclaim for breach of their employment agreements. Gem is entitled to summary judgment in its favor under Mass. R. Civ. P. 56(c) with respect to the Wage Act counterclaim. The Court will otherwise deny the summary judgment motion and will deny the related motion to strike as moot.
 
                                                            -1-
 
1. Gem’s Remaining Claims cannot survive summary judgment because Gem has been unable to muster evidence sufficient to prove key elements of those claims. See Kourouvacilis v. General Motors Corp., 410 Mass. 706, 715–716 (1991). “A nonmoving party’s failure to establish an essential element of her claim ‘renders all other facts immaterial’ and mandates summary judgment in favor of the moving party.” Roman v. Trustees of Tufts College, 461 Mass. 707, 711 (2012), quoting Kourouvacilis, supra, at 711.
1.1. Fraud and Breach of Contract. The Rusty’s Defendants made a series of representations and warranties in § 5 of the APA. Gem’s claims for fraud and for breach of contract are based on allegations that four of the representations made by the Rusty’s Defendants in the APA were false. The summary judgment record shows that Gem cannot prove any part of these claims.
The Court finds that all relevant provisions of the APA are unambiguous when considering the contract as a whole, and that their meaning is therefore a question of law that the Court may decide on a summary judgment motion. See Seaco Ins. Co. v. Barbosa, 435 Mass. 772, 779 (2002); Trustees of Beechwood Village Condominium Trust v. USAlliance Federal Credit Union, 95 Mass. App. Ct. 278, 284–285 (2019). “Whether a contract is ambiguous is also a question of law.” Eigerman v. Putnam Investments, Inc., 450 Mass. 281, 287 (2007). Even if contract language is hard to parse, that does not make it ambiguous. See Sullivan v. Southland Life Ins. Co., 67 Mass. App. Ct. 439, 443 (2006). That the parties disagree about how to read the APA does not make it ambiguous either. “[A]mbiguity is not created simply because a controversy exists between parties, each favoring an interpretation contrary to the other’s.” Indus Partners, LLC v. Intelligroup, Inc., 77 Mass. App. Ct. 793, 795 (2010) (affirming summary judgment), quoting Suffolk Constr. Co., Inc. v. Lanco Scaffolding Co., 47 Mass. App. Ct. 726, 729 (1999).
1.1.1. Representation of No Affiliates. In § 5.E of the APA, the Rusty’s Defendants represented that Rusty’s “does not have any subsidiaries, other affiliates (other than the Owners and Landlord)[,] or investments in any other entity or business or operation.”
Gem cannot show that this statement was false, because it cannot establish that Air Pros was a subsidiary or affiliate of Rusty’s or that any of the Rusty’s Defendants had any investment in Air Pros. It is undisputed that none of the Rusty’s Defendants held any direct or indirect ownership interest in Air Pros or had any involvement in the operations of Air Pros.
 
                                                            -2-
 
The APA does not define “affiliate.” But in the context of business contracts like this, the term “affiliate” refers to a “corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation.” Lombardi Corp. v. Urban Improvement Fund Ltd. 1973, Suffolk Sup. Ct. no. 1484CV03922-BLS1, 2016 WL 3919624, at *12 (Mass. Super. May 20, 2016) (Kaplan, J.), quoting Black’s Law Dict. (10th ed. 2014); accord, e.g., Delaware Ins. Guar. Ass'n v. Christiana Care Health Servs., Inc., 892 A.2d 1073, 1077 (Del. 2006); Satterfield v. Simon & Shuster, Inc., 569 F.3d 946, 955 (9th Cir. 2009).
In turn, “control” means “[t]he direct or indirect power to govern the management and policies of a person or entity, whether through ownership of voting securities, by contract, or otherwise; the power or authority to manage, direct, or oversee.” Planned Parenthood Fed'n of Am., Inc. v. Kennedy, 162 F.4th 155, 172 (1st Cir. 2025), quoting Black’s Law Dictionary (12th ed. 2024); accord, e.g., Rothstein v. American Int’l Group, Inc., 837 F.3d 195, 206 (2d Cir. 2016); Lombardo’s Ravioli Kitchen, Inc. v. Ryan, 842 A.2d 1038, 1096 (Conn. 2004).
Merely showing that someone has ability “to influence managerial decisions” does not establish their control over a corporation, because influence is not the same as having “the power to direct or cause the direction of the management and policies” of the corporation. See, e.g., In re Weight Watchers International Inc. Securities Litig., 504 F.Supp.3d 224, 263 (S.D.N.Y. 2020), quoting In re BioScrip, Inc. Sec. Litig., 95 F.Supp. 3d 711, 740 (S.D.N.Y. 2015) (power to influence) and S.E.C. V. First Jersey Sec., Inc., 101 F.3d 1450, 1472–1473 (2d Cir. 1996) (power to direct management and policies).
Gem cannot show that Air Pros was an affiliate of Rusty’s because it has mustered no evidence that any of the Rusty’s Defendants owned any part of Air Pros or otherwise had the power to direct Air Pros’ management and policies.
That two of Rusty’s employees, Mike Hansen and Paul Neary, owned Air Pros does not make that entity an “affiliate” of Rusty’s. It is undisputed that Mike Hansen and Neary did not have any ownership interest in Rusty’s; as Gem concedes, Mike Hansen released any claimed ownership interest before the APA was executed. Though Mike Hansen’s master plumber’s license was used by Rusty’s that did not make him a Rusty’s shareholder. In sum, the summary judgment record shows it is undisputed that Mike Hansen and Neary had no
 
                                                            -3-
 
control over Rusty’s, and thus their ownership of Air Pros did not make the two companies affiliates.
The argument by Gem that Rusty’s effectively controlled Air Pros because Mike Hansen and Paul Neary were subject to non-competition agreements is without merit. Two corporations are considered to be affiliates only if common owners have the power to control the management and policies of both entities. Planned Parenthood, supra. Merely entering into a contract that imposes direct or indirect obligations on a corporation does not make that entity one’s “affiliate,” because it does not give the contracting party the power to direct the management, policies, and day-to-day affairs of the corporation. “[T]he term ‘affiliate’ … refers to a relationship that is closer than a mere arm’s length contractual relationship.” Iqbal v. Ziadeh, 10 Cal.App.th 1, 9, 215 Cal.Rptr.3d 684, 690 (Cal. Ct. App. 2017); accord Checkrite Petroleum, Inc. v. Amoco Oil Co., 678 F.2d 5, 8 n.4 (2d Cir. 1982) (corporation that contracted to sign up gas stations to purchase petroleum products from Amoco was not an “affiliate” within meaning of federal Petroleum Marketing Practices Act because it did not control, was not controlled by, and was not under common control with Amoco); see also Paracor Finance, Inc. v. General Elec. Capital Corp., 96 F.3d 1151, 1162–1163 (9th Cir. 1996) (lender did not control corporate borrower, and thus not responsible for borrower’s alleged violation of Securities Exchange Act of 1934).
1.1.2. Representation of No Interfering Conditions. In § 5.G of the APA, the Rusty’s Defendants represented that “[t]here are no facts or conditions affecting any of the Assets that would reasonably be expected, individually or in the aggregate, to interfere with the use, occupancy or operation of the Assets.”
Gem contends that this provision imposed an obligation to disclose that two of Rusty’s supervisors were operating a competing HVAC business, as well as an obligation to disclose that Mike Hansen might not choose to work for Gem after it acquired Rusty’s. Not so.
When Gem entered into the APA, it knew that Rusty’s had no monopoly and that all aspects of its plumbing and HVAC business were subject to vigorous competition. Gem conceded this point during oral argument.
The contractual representation that there were no conditions that would interfere with the use or operation of Rusty’s assets was not a representation that Rusty’s faced no competition, and therefore the fact that Air Pros ran a
 
                                                            -4-
 
competing HVAC business did not make this representation false, as Gem incorrectly contends. Similarly, the representation in § 5.G was also not a representation that Mike Hansen or any other Rusty’s employees were committed to accepting, or even likely to accept, an offer to work for Gem.
As with any contract concerning a business venture, the Court must construe the APA in a manner that will give it “effect as a rational business instrument and … carry out the intent of the parties.” Robert and Ardis James Foundation v. Meyers, 474 Mass. 181, 188 (2016), quoting Starr v. Fordham, 420 Mass. 178, 192 (1995). In doing so, the Court must be “guided by ‘justice, common sense, and the probable intent of the parties.’ ” Robbins v. Krock, 73 Mass. App. Ct. 134, 139 (2008), quoting Fried v. Fried, 5 Mass. App. Ct. 660, 664 (1977); accord, e.g., Krapf v. Krapf, 439 Mass. 97, 105 (2003); City of Haverhill v. George Brox, Inc., 47 Mass. App. Ct. 717, 720 (1999). In other words, it must be mindful that “[b]usiness contracts must be construed with business sense as they naturally would be understood by intelligent persons of affairs, … and not according to forced and refined interpretations which are intelligible only to lawyers.” Shareholder Representative Services LLC v. Renesas Elec. Corp., 2024 WL 5192070, at *16 n.181 (Del. Ch. 2024), quoting 17A Am. Jur. 2d Contracts § 386.[1]
No rational business person in Gem’s position would have understood § 5.G of the APA as representing that Rusty’s had no HVAC competitors or that Mike Hansen planned to join Gem after the closing. The Rusty’s defendants are therefore entitled to summary judgment on this aspect of the fraud and contract claims because Gem has the burden of proving that the § 5.G representation was false, and the summary judgment record establishes that Gem has “no reasonable expectation” of being able to do so. See Jinks v. Credico (USA) LLC, 488 Mass. 691, 704 (2021), quoting Kourouvacilis, 410 Mass. at 716.
1.1.3. Representation of No Material Adverse Change. In § 5.S of the APA, the Rusty’s Defendants represented that, “[s]ince the Financial Statement Date, there has not been … any material adverse change in the business, prospects, financial condition, earnings or operations of Seller.” The “Financial Statement
 
--------------------------------------------
 
[1] Accord Lowber v. Bangs, 69 U.S. (2 Wall.) 728 (1864) (“All mercantile contracts ought to be construed according to their plain meaning, to men of sense and understanding, and not according to forced and refined constructions, which are intelligible only  to  lawyers,  and  scarcely  to  them.”)  (quoting  Crookewit v. Fletcher, 1 Hurlstone & Norman 893, 912 (Ct. of Exchequer 1857)).
 
                                                            -5-
 
Date” was July 31, 2023.[2] The transaction closed two weeks later, on August 14, 2023. Thus, § 5.S was a representation that there had been no material change in Rusty’s business, prospects, financial condition, earnings, or operations between July 31 and August 14, 2023.
Gem has no reasonable expectation of proving that this representation was false, because it has musted no evidence that there was any material change in any of these things after July 31 and before the August 14 closing.
Though Gem contends that the Rusty’s Defendants were required under § 5.S to disclose that Mike Hansen was likely to leave after Gem acquired Rusty’s and compete for HVAC customers, Gem has no evidence that anything about whether Mike Hansen planned to do so changed during the relevant time period. Gem points to texts between Tom and Mike Hansen in early June and on July 5, 2023. Since those communications came before the July 31 Financial Statement Date, they cannot be evidence of a material change in anything after that date. Gem also cites texts between Tom and Mike Hansen on August 23, which was nine days after the closing. That is not evidence of a material change in anything that occurred before August 14.
In any case, even if Mike Hansen had first told his father between July 31 and August 14 that he did not want to work for Gem after the closing, that would not have been a material adverse change in Rusty’s “business, prospects, financial condition, earnings, or operations.” As discussed above, any rational business in Gem’s position would have understood that Rusty’s did not have a monopoly and faced competition. Further information about the nature of that competition would not have been a “material adverse change.”
1.1.4. Representation of Compliance with Law. Finally, in § 5.F of the APA, the Rusty’s Defendants represented that Rusty’s “has complied with all applicable Laws in all material respects that are or were applicable to the operation of the Business or the ownership of the Assets of Seller prior to the Closing Date[.]”
The summary judgment record conclusively disproves Gem’s allegation in its complaint that Michael Hansen’s master plumber’s license was unlawfully being used both by Rusty’s and by Air Pros. The record establishes that only
 
--------------------------------------------
 
[2]        The term is defined in § 5.R of the APA.
 
                                                            -5-
 
Rusty’s used this license, and that Air Pros was instead using Michael’s journeyman plumbing and journeyman sheet metal licenses.
Gem has effectively waived this aspect of its fraud and contract claims by not voicing any opposition to the Rusty’s Defendants’ summary judgment motion with respect to the § 5.F part of these claims.
1.2. Breach of Fiduciary Duty. Roderick and Hansen are entitled to summary judgment on Gem’s claim that they breached their fiduciary duty of loyalty.
The Court agrees with Gem that there is a triable issue as to whether Roderick and Hansen owed fiduciary duties to Gem during the week or so that they were employed by Gem after the closing. Any employee who occupies a position of trust and confidence owes their employer a duty of loyalty, which means they must act in a way that protects their employer’s interests and must act solely for their employer’s benefit in all matters within the scope of their employment. See Chelsea Industries, Inc. v. Gaffney, 389 Mass. 1, 11 (1983). A reasonable jury might be convinced, based on the evidence in the summary judgment record, that Roderick and Hansen held such a position during the brief time that they served as co-managers of Gem’s new division, even though they were not officers or directors. Compare See Meehan v. Shaughnessy, 404 Mass. 419, 433– 434, 438 (1989) (law firm partners, non-equity junior partner, and associate all owed duty of loyalty to firm).
But Gem has not been able to muster any evidence that Roderick or Hansen breached their duty of loyalty, assuming that they owed fiduciary duties while employed by Gem.
There is no evidence and Gem does not contend that Roderick or Hansen worked for, held any ownership interest in, or did anything to promote the business of Air Pros.
Instead, Gem contends that they “breached their duty of loyalty to Gem by failing to inform Gem after the closing that Mike Hansen owned and operated Air Pros[.]”
This claim fails because, for the reasons discussed above, the identity of any particular competitor was not material information. To meet their duty a loyalty, a fiduciary “must fully disclose all known material information to the person to whom he owes the duty.” Greenleaf Arms Realty Tr. I, LLC v. New Bos. Fund, Inc., 81 Mass. App. Ct. 282, 291 (2012). “Omitted facts are not material simply because they might be helpful.” Skeen v. Jo-Ann Stores, Inc., 750 A.2d
 
                                                            -7-
 
1170, 1174 (Del. 2000). Gem admits it knew full well that Rusty’s did not have a monopoly and that after the closing Gem would be competing for business with other plumbing and HVAC firms. Gem has not been able to muster any evidence showing that whether Mike Hansen ran one of those competitors was material information that would have changed how Gem ran its new business.
In its written opposition, Gem contends that this information was material because “Gem could have taken a myriad of actions to mitigate losses resulting from Mike Roderick and Tom Hansen’s breach of the APA and fraud had either or both of them immediately told Gem about Air Pros.” In other words, Gem’s claim for breach of fiduciary duty turns on whether it can prove that Roderick and Hansen breached the APA and engaged in fraud by making false representations in that contract. As discussed above, however, Gem cannot prove those claims. Since that is the sole basis on which Gem contends that the alleged non-disclosure was material, its fiduciary duty claim fails as well.
1.3. Chapter 93A. Gem says that its unfair trade practices claim under G.L. c. 93A is based on the alleged fraud by the Rusty’s Defendants.
Where (as here) a claim under c. 93A is “wholly derivative” of a tort claim, and the plaintiff fails to must evidence sufficient to prove the underlying tort, the defendant is entitled to judgment in their favor on the c. 93A claim as well. See Pembroke Country Club, Inc. v. Regency Savings Bank, F.S.B., 62 Mass. App. Ct. 34, 40–41 (2004); accord, e.g., Dulgarian v. Stone, 420 Mass. 843, 853 (1995).
Since the c. 93A claim in this case is “solely based” on an “underlying claim for common law fraud,” and the fraud claim fails as a matter of law, it necessarily follows that the c. 93A also fails as a matter of law. Macoviak v. Chase Home Mortgage Corp., 40 Mass. App. Ct. 755, 760, rev. denied, 423 Mass. 1109 (1996) (affirming grant of summary judgment for defendant on fraud and c. 93A claims); see also Park Drive Towing, Inc. v. City of Revere, 442 Mass. 80, 86 (2004) (where c. 93A claim is “derivative of” breach of contract claim, and plaintiff could not show it had any contract with defendant, the c. 93A claim “must also fail”). The Rusty’s Defendants are therefore entitled to summary judgment in their favor on this claim.
1.4. Civil Conspiracy. The claim for civil conspiracy fails for much the same reason. To succeed on its claim that the Rusty’s Defendants are liable for participating in a conspiracy on a “concerted action” theory, Gem must establish “an underlying tortious act in which two or more persons acted in
 
                                                            -8-
 
concert and in furtherance of a common design or agreement.” Bartle v. Berry, 80 Mass. App. Ct. 372, 383–384 (2011). As discussed above, however, Gem has no reasonable expectation of being able to prove its tort claims for fraud or for breach of fiduciary duty. It follows that the Rusty’s Defendants are entitled to judgment in their favor on the conspiracy claim as a matter of law.
2. The Rusty’s Defendants’ Counterclaims. Let’s turn to the Rusty’s Defendants four counterclaims
2.1. Breach of Employment Agreements. Roderick and Hansen are entitled to partial summary judgment as to liability on their counterclaim that Gem breached their employment agreements by firing them without cause after just a few days, and failing to pay the severance benefits provided for in § 6 of those contracts. The Court cannot determine what amount of damages Roderick and Hansen are entitled to recover on this record.
For the reasons discussed above, the summary judgment record establishes that Gem did not fire Roderick and Hansen for cause. As Gem correctly notes, the employment agreements define “cause” to include “the commission of any dishonesty, fraud, embezzlement, or illegal or grass misconduct that has or could be reasonably expected to cause material damage” to Gem. In its termination letters, Gem said that it was firing Roderick and Hansen for failing “to disclose the competitive business activities of former employees before the closing of Gem’s acquisition of the assets of Rusty’s, Inc.” As discussed above in §§ 1.1.1 and 1.1.2 of this decision, Roderick and Hansen had duty to make any such disclosure. Under the terms of the employment agreements, not disclosing information that Roderick and Hansen had no duty to disclose could not constitute “cause” to terminate their employment, as a matter of law.
2.2. Wage Act—Vacation Time. The Court will grant summary judgment in Gem’s favor on the Wage Act counterclaim. See Mass. R. Civ. P. 56(c) (“Summary judgment, when appropriate, may be rendered against the moving party.”); Petrillo v. Zoning Bd. of Appeals of Cohasset, 65 Mass. App. Ct. 453, 460– 461 (2006) (affirming sua sponte grant of summary judgment for non-moving party). In their counterclaims, Roderick and Hansen allege that they were not paid for all accrued vacation time when they were fired. That is incorrect for the reasons discussed in Gem’s opposition. Roderick and Hansen have no reasonable expectation of being able to prove this counterclaim.
 
                                                            -9-
 
2.3. Breach of Asset Purchase Agreement. The Court cannot determine on this record whether Gem paid all amounts due under the APA. It will therefore deny Rusty Defendants’ request for summary judgment on this counterclaim.
2.4. Breach of Promissory Note. The same is true with respect to the final counterclaim. The Rusty’s Defendants have not shown that they are entitled to judgment in their favor as a matter of law on their counterclaim that Gem breached the promissory note.
ORDERS
The motion for summary judgment by defendants Rusty’s, Inc., Michael Roderick, and Thomas Hansen (docket no. 53) is allowed in part with respect to all of Plaintiff’s remaining claims against these defendants, and with respect to Plaintiff’s liability on the counterclaim for breach of Roderick’s and Hansen’s employment agreement. This motion is denied in part with respect to the other counterclaims.
Pursuant to Mass. R. Civ. P. 56(c) the Court hereby grants partial summary judgment in Plaintiff’s favor on the Wage Act counterclaim by Michael Roderick and Thomas Hansen.
Plaintiff’s motion to strike statement of facts 31, 190, and 193 (docket no. 60) is denied as moot because the Court was able to resolve the summary judgment without considering those paragraphs.
The session clerk shall schedule a final pre-trial conference with respect to the remaining counterclaims.
/s/Kenneth W. Salinger Justice of the Superior Court
April 29, 2026