NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11740


SEAN PUGSLEY  vs.  POLICE DEPARTMENT OF BOSTON & others.[1]



Suffolk.    January 6, 2015. - July 31, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
Hines, JJ.



Boston.  Municipal Corporations, Police.  Police, Hiring.  Anti-
    Discrimination Law, Sex, Bona fide occupational
    qualification.  Employment, Discrimination.  Practice,
    Civil, Standing.



    Civil action commenced in the Superior Court Department on
June 2, 2011.

    The case was heard by Carol S. Ball, J., on motions for
summary judgment, and entry of final judgment was ordered by
Frances A. McIntyre, J.

    The Supreme Judicial Court granted an application for
direct appellate review.


    Joseph L. Sulman (David Isaac Brody with him) for the
plaintiff.
    Nicole I. Taub for police department of Boston.


_____

    [1] The Commonwealth's human resources division (division),
the personnel director of the division, and the police
commissioner of Boston.

Nicholas A. Ogden, Assistant Attorney General (Ronald F. Kehoe, Assistant Attorney General, with him) for Human Resources Division & another.

The following submitted briefs for amici curiae:

Jamie Ann Sabino & Leah Kaine for The Women's Bar Association of Massachusetts.

Ralph C. Martin & Lisa A. Sinclair for Northeastern University.

Simone R. Liebman & Constance M. McGrane for Massachusetts Commission Against Discrimination.

CORDY, J.  The plaintiff, Sean Pugsley, brought a claim of sex discrimination against defendants Boston police department (department) and the Commonwealth's Human Resources Division (division) alleging a violation of G. L. c. 151B and of the Massachusetts Civil Rights Act, G. L. c. 12, § 11I.  The plaintiff's claim arises from the department's preferential treatment of females in hiring candidates for the December, 2010, police academy class.  Summary judgment was entered for the defendants on the discrimination claim, G. L. c. 151B.[2]  For the reasons stated herein, we vacate the judgment of the Superior Court and remand the case for entry of a judgment of dismissal for lack of standing.

1.  Background.  Under G. L. c. 31 and the division's personnel administration rules (rules), the department appoints entry-level police officers from a "main certification" list generated by the division at the department's request.  The

_____

[2] The count of the complaint alleging a violation of G. L. c. 12, § 11I, was dismissed by agreement of the parties.

division creates this list by ranking candidates on an eligibility list according to their scores on the most recent civil service examination (examination).  The eligibility list is then augmented by candidates for "reemployment,"[3] and candidates who possess statutory preferences, including veterans' preferences.  The candidates for reemployment are required to be placed first on the main certification list, followed by those with statutory preferences,[4] and finally followed by those remaining with the highest scores on the examination.  See G. L. c. 31, §§ 26, 40.  By requesting a "selective certification" of candidates from the division, the department may consider candidates out of their respective order if they possess certain qualifications beyond those generally measured by the examination, such as:  gender, language, and

---

[3] Pursuant to G. L. c. 31, § 40, a permanent employee who becomes "separated from his position because of lack of work or money, or the abolition of his position," may be placed on a "reemployment list" in order of seniority.  The division is required to certify qualified applicants from that list before certifying names from any other promotional list.

[4] Those candidates with statutory preferences who appear on the main certification list are themselves ranked in order of their civil service examination scores.  In other words, if there were fifty candidates with veterans' preference, they would all appear higher on the main certification list than candidates without such preference, but the order among those fifty candidates would depend on their examination scores.

emergency medical training.[5] These candidates are to be selected from the eligibility list and placed on a "selective certification" list according to their examination scores, and any of the applicable statutory preferences which those candidates may have.

In June, 2008, the plaintiff, a male, scored 103 on the examination in connection with his application for the December, 2010, police academy class. The plaintiff's score placed him at the top of the list of eligible candidates who did not qualify for reemployment or a statutory preference. However, because of those preferences, he was ranked 214 on the eligibility list.

In March, 2010, the department requested a main certification list and three selective certification lists from the division for appointments. The department sought to appoint twenty-four candidates from a main certification list. The main certification list provided to the department by the division included 113 of the top candidates on the eligibility list.[6]

---

[5] The Boston police department (department) is required to submit to the division, along with its request for a selective certification, the reasons for needing particularly qualified candidates that normally would not be addressed by the civil service examination or covered by any of the statutory preferences.

[6] In addition to this list, the department also considered qualified cadets as permitted by statute. Statute 1978. c. 174, as amended by St. 1979, c. 560, and St. 1984, c. 277, permits the department to place a number of qualified Boston police cadets (up to thirty-five or one-third of an academy class,

Because the plaintiff was number 214 on the eligibility list, his name was not on the main certification list.

The other three certification requests were "selective," seeking candidates with special qualifications as permitted by the rules. These selective certifications, which were approved by the division, allowed for the appointment of ten female candidates from a special certification list of 178 female candidates; eight Cape Verdean speakers from a list of forty candidates; and ten Haitian Creole speakers from a list of fifty-five candidates.

Sometime later in the hiring and review process, the department recognized a need to appoint more than the previously approved ten female candidates from the special certification list of 178 candidates. Rather than requesting an additional female selective certification list from the division,[7] the department hired a total of twenty-eight of the female

---

whichever is greater) into each academy class without certification from an eligibility list prepared under G. L. c. 31 by the division. These cadets would therefore be eligible for selection prior to any consideration of the selective or main certification lists. See generally G. L. c. 147, § 21A (appointment, qualifications, compensation, status, and retirement and pensions of police cadets).

[7] It was alleged that doing so would have taken too much time, and that it is not uncommon for the appointing authority to make more appointments from the certification lists than previously authorized.

candidates from the existing list.[8]  In January, 2011, the department notified the division of these additional hires, which the division approved.  Ultimately, eighty-three candidates selected from the four certification lists successfully completed the recruitment process and entered the police academy in December, 2010.  The candidates with statutorily preferred status were not exhausted on the main certification list and, as a result, other applicants on the eligibility list, such as the plaintiff, were not considered.

The plaintiff filed suit in Superior Court in June, 2011, challenging the preferential treatment of female candidates because of their gender.[9]  The plaintiff and the department filed cross motions for summary judgment.[10]  In September, 2013, a

---

[8] The judge stated that a total of thirty candidates from the female selection entered the academy, but the correct number appears to be twenty-eight.

[9] In addition to filing suit in the Superior Court, the plaintiff also appealed the department's hiring decisions to the Civil Service Commission (commission), pursuant to G. L. c. 31, § 2 (b).  In a written decision, the commission found that the appeal was not duplicative of the action filed in the Superior Court.  The commission dismissed the department's and the division's motions for summary disposition and found that the department and the division did not comply with the express mandate of the civil service law.  It subsequently ordered that an investigation be initiated pursuant to G. L. c. 31, § 2 (a). That action is not the subject of this appeal.

[10] The division and its personnel director were still parties in the case at the time the cross motions for summary judgment were filed, but were not involved in the cross motions. After the judge granted judgment in favor of the department,

Superior Court judge denied the plaintiff's motion and granted judgment in favor of the department, finding that the preferential treatment of female candidates was justified because gender was a valid bona fide occupational qualification (BFOQ)[11] and, as a result, the department was entitled to judgment as a matter of law. We granted the plaintiff's application for direct appellate review.

2. Discussion.[12] In reviewing a grant of summary judgment, "we assess the record de novo and take the facts, together with all reasonable inferences to be drawn from them, in the light most favorable to the nonmoving party." See Bulwer v. Mount Auburn Hosp., 86 Mass. App. Ct. 316, 318 (2014), citing Godfrey v. Globe Newspaper Co., 457 Mass. 113, 119 (2010).

a. Standing. In order to have standing in the instant case, the plaintiff must "show that the challenged action has caused [him] injury" and that there was a "breach of duty owed to [him] by the public defendants" (citations omitted).

---

both the department and the division moved for entry of final judgment in favor of all defendants, which was granted in October, 2013.

[11] If the employer can demonstrate that a bona fide occupational qualification (BFOQ) limits the position to a particular gender, G. L. c. 151B, § 4 (1), permits the use of gender in the hiring process.

[12] We acknowledge the amicus briefs submitted by Northeastern University, the Massachusetts Commission Against Discrimination, and The Women's Bar Association.

Sullivan v. Chief Justice for Admin. & Mgt. of the Trial Court, 448 Mass. 15, 21 (2006). See Yeager v. General Motors Corp., 265 F.3d 389, 395 (6th Cir. 2001), cert. denied, 535 U.S. 928 (2002). Simply alleging injury alone is not sufficient and "[i]njuries that are speculative, remote, and indirect" do not confer proper standing. Sullivan, 448 Mass. at 21. See Los Angeles v. Lyons, 461 U.S. 95, 101–102 (1983) ("plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury . . . [that is] real and immediate, not conjectural or hypothetical" [quotations and citations omitted]); Warth v. Seldin, 422 U.S. 490, 501 (1975) (plaintiffs must allege "distinct and palpable injury" to invoke judicial intervention).

Standing can be addressed by an appellate court sua sponte even if not raised properly on appeal. See Sullivan, 448 Mass. at 21 ("[t]he issue of standing is one of subject matter jurisdiction"); Litton Bus. Sys., Inc. v. Commissioner of Revenue, 383 Mass. 619, 622 (1981) ("a jurisdictional issue must be decided, regardless of the point at which it is first raised . . . [and] [s]ubject matter jurisdiction cannot be conferred by consent, conduct or waiver" [citation omitted]). Therefore, it is appropriate for this court to take note of an absence of

proper standing "whenever it appears, whether by suggestion of a party or otherwise."  Id.[13]

At oral argument, the plaintiff argued that he has proper standing to bring suit, contending that his name likely would have been considered on the main certification list but for the department's use of the female certification.  However, this contention is little more than an allegation that an injury might have occurred if a series of events transpired in a certain way.

The plaintiff's position on the eligibility list -- 214 -- is indicative of the unlikelihood that his name would ever have been reached.  Indeed, eighty-five other candidates were ahead of him on the eligibility list when the hiring process was completed.  Thus, the department would have had to exhaust all 113 names on the main certification list (which it did not), as well as the remaining eighty-five candidates ranked ahead of the plaintiff on the eligibility list before the plaintiff would be considered for a position.[14]  Nothing in the record speaks to the

---

[13] The motion judge concluded that because the department was entitled to judgment as a matter of law, it was unnecessary to consider the plaintiff's standing, an issue raised below by the defendants.

[14] Although the plaintiff ranked 214 on the eligibility list and 113 of these candidates were placed on the main certification list, it appears that some of the first 214 candidates on the eligibility list qualified to be placed on one of the three selective certification lists, which would leave eighty-five candidates (rather than one hundred candidates)

relative likelihood that the candidates ranked ahead of the plaintiff would have been granted conditional offers of employment, whether they would have passed the required fitness and medical review, or even if they would have accepted or rejected said offers. Although it is possible that most of the people ranked ahead of the plaintiff would have either turned down an offer or would have failed the fitness and medical review, such a position is purely speculative based on the record before us.

The plaintiff argued before the motion judge that conditional offers were given to nineteen of the 113 candidates on the main certification list, a ratio of one in six. Using this ratio, the plaintiff contended that, without the female selective list, the department would hypothetically need to consider approximately 180 more candidates from the eligibility list (including him) in order to fill all the available positions. While this certainly might have happened, nothing in the record supports the plaintiff's bare assertion.

Based on the record before us, the plaintiff has failed to articulate an injury that is anything but hypothetical and, therefore, we cannot say that he has standing to bring his claim. See Group Ins. Comm'n v. Labor Relations Comm'n, 381

---

ahead of him on the eligibility list even after the exhaustion of the selection of candidates from the main certification list.

Mass. 199, 204 (1980) ("[n]ot every person whose interests might conceivably be adversely affected [has standing to be] entitled to review" [emphasis added]).  The plaintiff does not point this court to any fact in the record or any controlling authority that shows his "injury" was anything more than speculative. Rather, in his reply brief, he merely contends that whether the department's sex discrimination materially disadvantaged him must be decided by a fact finder, rather than addressed sua sponte by this court.  This argument is unpersuasive.

First, it is solely the plaintiff's burden to prove his standing.  He must allege sufficient facts to show that he has suffered a nonspeculative, direct injury.  See Sullivan, 448 Mass. at 21.  He cannot subsequently claim that there are insufficient facts for this court to determine whether he lacks standing; such an argument is circular.  If there are insufficient facts to determine standing, then logic dictates that the plaintiff has failed to articulate the necessary facts to prove his standing.

Second, although the motion judge did not make any particularized findings regarding the plaintiff's standing, the record can still be evaluated on this issue.  Contrast Combs v. United States, 408 U.S. 224, 227-228 (1972) (vacating and remanding standing determination because record was "barren of the facts" necessary to determine whether standing existed).

The Civil Service Commission's decision, see note 9, supra, from which the plaintiff draws his ratio argument, is part of the record before us, as are the selective certifications used by the department and multiple affidavits that outline the department's and the division's respective procedures. Sufficient facts are reflected in that record for this court to consider standing as a part of our de novo review of an appeal from summary judgment.  See Matthews v. Ocean Spray Cranberries, Inc., 426 Mass. 122, 123 n.1 (1997) (record open to independent consideration on appeal and reviewing court may make compilation of relevant facts from record to decide ultimate questions of law).

Viewing all inferences in the light most favorable to the plaintiff, we cannot conclude, in the absence of articulated facts or controlling authority, that the alleged injury is sufficiently concrete and imminent so as to confer proper standing on the plaintiff.

b.  Gender as BFOQ.  As the plaintiff lacks proper standing, we need not decide the merits of his case.  However, as this is an issue that will likely arise in the future[15] and is

---

[15] Recently the Massachusetts Commission Against Discrimination found probable cause in favor of a gender discrimination claim brought by another male candidate for the very same police academy class.  See Toomey vs. Boston Police Dep't, Mass. Comm'n Against Discrimination No. 10BEM03305 (Aug. 6, 2014).

a matter of significant public interest, we take this opportunity to comment briefly on the use of the BFOQ exception by the department in the circumstances presented here.

General Laws c. 151B prohibits discrimination in employment on the basis of gender unless the employer has a BFOQ to limit the position to a particular gender. G. L. c. 151B, § 4 (1). The assertion that a single-sex hiring policy is supported by a BFOQ is an affirmative defense, and the burden of proving it rests, at all times, with the employer. Sarni Original Dry Cleaners, Inc. v. Cooke, 388 Mass. 611, 617-618 (1983). The BFOQ exception is to be narrowly applied.[16] Id. at 617. See Dothard v. Rawlinson, 433 U.S. 321, 334 (1977).

Parties in several contexts have sufficiently met their BFOQ burdens and demonstrated a need for gender-based policies. For example, in Everson v. Michigan Dep't of Corrections, 391 F.3d 737, 740, 751-753 (6th Cir. 2004), cert. denied, 546 U.S. 825 (2005), a BFOQ defense was sufficient to designate 250 positions at an all female prison to be staffed solely by female officers. This was permitted after the court was supplied with "an array of materials," id. at 752, demonstrating that the institution faced a "grave problem of sexual abuse of female

---

[16] The Massachusetts Commission Against Discrimination also takes the position that the BFOQ defense "provides only the narrowest of exceptions." 804 Code Mass. Regs. § 3.01(3)(a) (1995).

inmates[,] . . . a pair of high-profile lawsuits[,] and a chorus of public criticism charging that [the prison] had ignored, or covered up, widespread sexual abuse."  Id. at 751. Additionally, in Jennings v. New York State Office of Mental Health, 786 F. Supp. 376, 381-387 (S.D.N.Y.), aff'd, 977 F.2d 731 (2d Cir. 1992), a BFOQ defense was deemed justified to limit the availability of shifts by gender at a mental health facility, as several facility policies required staff members to observe patients in particularly intimate settings.

Here, the department essentially argues that its use of a female selective certification was justified by the statistical disparity between the number of female Boston police officers and the number of female suspects[17] and female victims[18] that come into contact with law enforcement.  While we recognize the need for and the importance of diversified, professional, police departments, the use of statistical disparities, without more,

---

[17] At the time of its request for a female certification, recognizing that the Legislature has provided statutory authority for limiting hiring to male or female candidates in certain circumstances, see G. L. c. 31, § 21, the total number of female officers constituted only thirteen per cent of the department's force, and the number of females involved in police contact as a result of alleged criminal activity was approximately eighteen per cent.

[18] In the years leading up to the department's request for a female certification, over fifty per cent of all assault victims in the city were female.

will generally be insufficient to support a BFOQ.[19]  We leave it in the first instance to the Massachusetts Commission Against Discrimination to particularize the showing necessary for engaging in such discriminatory hiring through the BFOQ process.

3.  <u>Conclusion</u>.  For the reasons stated above, the judgment of the Superior Court is vacated, and the case is remanded for entry of a judgment of dismissal for lack of standing.

<u>So ordered</u>.

---

[19] In its filings, the department did not detail any efforts to increase the number of women available for appointment without relying on the BFOQ.  Such efforts, like recruitment efforts directed at women veterans and the use of a cadet training program, are relevant, if not explicitly required, in assessing the propriety of using discriminatory hiring as a means of increasing the department's diversity.