SUPERIOR COURT 
 
 PREDICTSOFT, INC. v. BOSTON MERIDIAN, LLC; JOHN SIRACUSE; JOHN C. RABY; AND GARRETT PALM v. PREDICTSOFT, INC. AND SAQIB SYED

 
 Docket:
 2284CV01379-BLS2
 
 
 Dates:
 June 11, 2024
 
 
 Present:
 Kenneth W. Salinger
 
 
 County:
 SUFFOLK
 

 
 Keywords:
 DECISION AND ORDER ALLOWING PREDICTSOFT, INC.’S AND SAQIB SYED’S MOTION FOR JUDGMENT ON THE PLEADINGS AS TO BOSTON MERIDIAN, LLC’S COUNTERCLAIMS
 
 

 PredictSoft, Inc., brought this lawsuit. It contends that Boston Meridian, LLC, owes but has refused to pay success fees for investment banking deals that PredictSoft originated or helped to close. PredictSoft asserts claims against Boston Meridian and its current or former managers.
Boston Meridian responded by asserting counterclaims against PredictSoft and third-party claims (also styled as counterclaims) against Saqib Syed, who it describes as the sole owner, officer, and director of PredictSoft.
The Court will allow the motion by PredictSoft and Syed for judgment on the pleadings as to all of Boston Meridian’s counterclaims against them. The Court will dismiss Count IV without prejudice because Boston Meridian lacks standing to sue PredictSoft and Syed for fraud in connection with an investment made by a different business entity. It will order dismissal of the other counterclaims with prejudice because the factual allegations by Boston Meridian do not plausibly suggest (i) that PredictSoft is liable for breach of the express terms of, or the implied covenant of good faith and fair dealing in, its written consulting agreement with Boston Meridian, or (ii) that PredictSoft or Syed is liable for unjust enrichment, tortious interference, or engaging in unfair or  deceptive trade practices  that  violate  G.L.  c.  93A,  § 11.[1]   Since  the  other
 
--------------------------------------------
 
[1] A motion for judgment on the pleadings under Mass. R. Civ. P. 12(c) that seeks dismissal of claims or counterclaims on the ground that they fail to state a claim upon which relief can be granted is governed by the same standards as a similar motion to dismiss brought under Rule 12(b)(6). See Mullins v. Corcoran,
<continued…>
 
                                                            -1-
 
counterclaims fail as a matter of law, Boston Meridian may not assert a free- standing claim that Syed is personally liable for wrongdoing by PredictSoft.[2]
1. Breach of Contract—Count I. The factual allegations by Boston Meridian do not plausibly suggest that PredictSoft breach the express terms of its contract.
Boston Meridian entered into a Consulting Agreement with PredictSoft in January 2010. Boston Meridian agreed to pay PredictSoft a portion of the fees that it receives in any transaction, such as the sale of a business or a successful capital raise, if PredictSoft worked on the deal for Boston Meridian. A copy of this contract is attached to the complaint.
The Court finds that the Consulting Agreement is unambiguous; its meaning is therefore a question of law that the Court may decide on the pending motion for judgment on the pleadings.[3] Whether language used in a contract “is ambiguous is also a question of law for the court.”[4] Even contracts that are a bit
 
--------------------------------------------
 
488 Mass. 275, 281 (2021). To survive a motion to dismiss under Rule 12(b)(6), or an analogous motion for judgment on the pleadings under Rule 12(c), a complaint or counterclaim must allege facts that, if true, would “plausibly suggest[] … an entitlement to relief.” Id., quoting UBS Fin. Servs., Inc. v. Aliberti, 483 Mass. 496, 405 (2019).
A dismissal under Rule 12(b)(6) “for failure to state a claim … operates as a dismissal on the merits” and therefore has “res judicata effect.” Saade v. Wilmington Trust, National Ass’n, 494 Mass. 1193, 1194 (2024), quoting Mestek, Inc. v. United Pacific Ins. Co., 40 Mass. App. Ct. 729, 731, rev. denied, 423 Mass. 1108 (1996). In other words, a Rule 12(b)(6) dismissal is with prejudice.
[2] PredictSoft and Syed filed a 20-page memorandum in support of their motion, and also tried to incorporate by reference PredictSoft’s 20-page opposition to defendants’ previous motion to dismiss this action. That is improper. In the Superior Court, legal memoranda may not exceed 20 pages without leave of court. See Super. Ct. Rule 9A(a)(5)(iv). PredictSoft may not submit 40 pages of briefing without leave of court. The Court has not considered the extra briefing that PredictSoft and Syed sought to incorporate by reference.
[3] See Eigerman v. Putnam Investments, Inc., 450 Mass. 281, 287 (2007) (affirming dismissal of contract claim); accord Flomenbaum v. Commonwealth, 451 Mass. 740, 751-752 & n.12 (2008) (granting motion to dismiss because plain language of contract made clear that Commonwealth could terminate chief medical examiner before completion of five-year term).
[4] Berkowitz v. President & Fellows of Harvard College, 58 Mass. App. Ct. 262, 270, rev. denied, 440 Mass. 1101 (2003) (ordering dismissal of complaint for failure to state a viable claim for breach of contract).
 
                                                            -2-
 
convoluted or hard to parse may be unambiguous.[5] And the fact that the parties disagree about how to read the Consulting Agreement does not make it ambiguous either.[6]
By its terms, the Consulting Agreement applies only “to those clients who have been mutually identified in writing” by PredictSoft and Boston Meridian as being either “Engaged Clients” (meaning that they had already entered “into a contractual, active agreement” to be represented by Boston Meridian) or “Prospective Clients” of Boston Meridian.
With respect to identified Engaged or Prospective Clients, PredictSoft agreed to “use its best efforts in the performance of its obligations” under the contract, to “cooperate with” Boston Meridian’s personnel, and not to “interfere with the conduct of” Boston Meridian’s business. PredictSoft also agreed not to “engage with a Prospective or Engaged Client in any activity that is a conflict of interest” with Boston Meridian, “including any competitive activity.”
PredictSoft remained free, however, to compete for the business of any entity that the parties had not identified, in writing, as one of Boston Meridian’s Prospective Clients or Engaged Clients. The Consulting Agreement provided that “clients that have not been mutually identified in writing” by PredictSoft and Boston Meridian “do not qualify as Prospective or Engaged Clients, and that PredictSoft retained “the right to contact any such client in an independent manner” without any obligation “to refer such client” to Boston Meridian.
Boston Meridian claims that PredictSoft breached its contractual obligations by working independently on the sale of a company called ArrayIQ to a potential buyer named Device42, in a manner that alleged harmed Boston Meridian’s potential future relationship with Device 42. And it also alleges that PredictSoft committed a further breach of contract through its work for a company called jSonar, which Boston Meridian contends was a potential client that it “had been actively pursuing for years.” Boston Meridian alleges that Syed cut a side deal to provide advisory services to jSonar in exchange for substantial stock options,
 
--------------------------------------------
 
[5] See Sullivan v. Southland Life Ins. Co., 67 Mass. App. Ct. 439, 443 (2006) (“difficulty in comprehension does not equate with ambiguity”) (quoting Mass. Prop. Ins. Underwriting Ass'n v. Wynn, 60 Mass. App. Ct. 824, 827 (2004)).
[6] See Indus Partners, LLC v. Intelligroup, Inc., 77 Mass. App. Ct. 793, 795 (2010) (“ambiguity is not created simply because a controversy exists between parties, each favoring an interpretation contrary to the other’s”) (quoting Jefferson Ins. Co. v. Holyoke, 23 Mass. App. Ct. 472, 475 (1987)).
 
                                                            -3-
 
and that as a result when jSonar agreed to retain Boston Meridian in connection with a possible sale of the company it refused to pay more than $50,000 for work that should have earned Boston Meridian a $3m fee.
These allegations do not plausibly suggest that PredictSoft is liable for breach of contract, however, because Boston Meridian does not allege that ArrayIQ and jSonar were ever identified in writing by PredictSoft and Boston Meridian as “Engaged Clients” or “Prospective Clients” of Boston Meridian. By failing to designate these companies in writing as Prospective Clients, Boston Meridian gave PredictSoft carte blanche under the Consulting Agreement to contact and compete for business from those companies.
If Boston Meridian lost business opportunities as a result of PredictSoft doing what the contract expressly permitted, that cannot constitute a breach of contract. Cf. Butts v. Freedman, 96 Mass. App. Ct. 827, 828–830 (2020) (where limited liability company operating agreement provided the members could compete for business with LLC, doing so could not constitute breach of fiduciary duty by usurping business opportunities).
Boston Meridian insists that PredictSoft can be found liable as to ArrayIQ and jSonar for breaching its obligation in § 5 of the Consulting Agreement not to interfere with Boston Meridian’s business, even if the failure to designate these companies as an Engaged or Prospective Client means that it cannot have breached the obligation in § 1 not to engage in activities that conflict with Boston Meridian’s interests. This argument is without merit.
The language in § 5 stating that PredictSoft “shall not interfere with the conduct of the Company’s business” cannot be read in isolation. See, e.g., General Convention of the New Jerusalem in the United States of Am., Inc. v. MacKenzie, 449 Mass. 832, 835 (2007) (“The words of a contract must be considered in the context of the entire contract rather than in isolation.”); Kingstown Corp. v. Black Cat Cranberry Corp., 65 Mass. App. Ct. 154, 158 (2005) (“[T]he parties’ intent ‘must be gathered from a fair construction of the contract as a whole and not by special emphasis upon any one part.’ ”) (quoting Ucello v. Cosentino, 354 Mass. 48, 51 (1968), and Crimmins & Peirce Co. v. Kidder Peabody Acceptance Corp., 282 Mass. 367, 375 (1933)).
As noted above, the first paragraph of the Consulting Agreement specifies that the entire contract applies only with respect to clients that have been identified in writing as Engaged or Prospective Clients. That is true of all of the terms in
 
                                                            -4-
 
the rest of the document, including PredictSoft’s obligation in § 5 not to interfere with Boston Meridian’s business. That pertained only to Engaged or Prospective Clients that were identified as such in writing. It did not limit PredictSoft’s dealings with a business that Boston Meridian may have considered to be a potential client, but was never formally identified as an Engaged or Prospective Client of Boston Meridian.[7]
2. Breach of Implied Covenant—Count II. Boston Meridian’s claim for breach of the implied covenant of good faith and fair dealing adds nothing of substance to its claim for breach of the express terms of the contract.
This implied covenant “does not create rights or duties beyond those the parties agreed to when they entered into the contract.” Boston Med. Ctr. Corp. v. Secretary of Executive Office of Health & Human Servs., 463 Mass. 447, 460 (2012) (affirming dismissal of claim), quoting Curtis v.  Herb  Chambers  I-95,  Inc.,  458 Mass. 674, 680 (2011). “The implied covenant ‘concerns the manner of performance’ and ‘exists so that the objectives of the contract may be realized.’ ” Beauchesne v. New England Neurological Assocs., P.C., 98 Mass. App. Ct. 716, 722 (2020), rev. denied, 486 Mass. 1111 (2021), quoting Ayash v. Dana- Farber Cancer Inst., 443 Mass. 367, 385, cert. denied sub nom. Globe Newspaper Co. v. Ayash, 546 U.S. 927 (2005). In other words, it only governs “the manner in which existing contractual duties are performed.” Eigerman v. Putnam Investments, Inc., 450 Mass. 281, 289 (2007).
The facts alleged by Boston Meridian in its counterclaims do not plausibly suggest that PredictSoft breached the implied covenant of good faith and fair dealing.
3. Unjust Enrichment—Count III. Boston Meridian is not entitled to recoup any of the success fees that it paid to PredictSoft on the theory that PredictSoft and Syed were overpaid and unjustly enriched.
Boston Meridian alleges (in ¶ 38 of its counterclaims) that with respect to any deals that closed for clients “mutually identified in writing on Annex A of the
 
--------------------------------------------
 
[7] The allegation that Syed caused Boston Meridian to lose out on a large deal  with a company called Crypsis by watching a cricket match during a meeting with the company’s CEO may have provided good grounds to terminate or not renew the Consulting Agreement, but it does not plausibly suggest that Syed engaged in an activity that was a conflict of interest with Boston Meridian, failed to cooperate with Boston Meridian, or interfered in the conduct of Boston Meridian’s business.
 
                                                            -5-
 
Agreement, Boston Meridian … paid PredictSoft all fees due it” under the parties’ written contract. And it concedes (in ¶¶ 42–46) that with respect to the deals that PredictSoft worked on for clients not listed on Annex A, any fees that it paid to PredictSoft were “mutually agreed upon by the parties.”
Boston Meridian is bound by these allegations in its counterclaims. G.L. c. 231, § 87 (“In any civil action pleadings … shall bind the party marking them.”); Adiletto v. Brockton Cut Sole Corp., 322 Mass. 110, 112 (1947) (this statute provides that “facts admitted in pleadings” are “conclusive upon” the party making them); Maker v. Bermingham, 32 Mass. App. Ct. 971, 973 (1992) (admission as to mixed question of fact and law, in that case about existence of partnership, “will conclude the issue”) (quoting Wasserman v. Tonnelli, 343 Mass. 253, 257 (1961)).
“Ordinarily, a claim of unjust enrichment will not lie ‘where there is a valid contract that defines the obligations of the parties.’ ”Metropolitan Life Ins. Co. v. Cotter, 464 Mass. 623, 641 (2013), quoting Boston Med. Ctr. Corp. v. Secretary of Executive Office of Health & Human Servs., 463 Mass. 447, 467 (2012). That is because “[a] valid contract defines the obligations of the parties as to matters within its scope, displacing to that extent any inquiry into unjust enrichment.” Boston Med. Ctr. Corp., 463 Mass. at 467, quoting Restatement (Third) of Restitution and Unjust Enrichment § 2 (2011).
Since PredictSoft’s right to the payments made by Boston Meridian is defined agreements between the parties, Boston Meridian may not seek return of any part of those payments on a theory of unjust enrichment. See Metropolitan Life Ins., supra; Boston Med. Ctr., supra.
4. Fraud—Count IV. Boston Meridian may not pursue its counterclaim for fraud without showing that it has standing to do so. See HSBC Bank USA, N.A. v. Matt, 464 Mass. 193, 199 (2013) (“a plaintiff must establish standing in order for a court to decide the merits of a dispute or claim”). A plaintiff has standing to sue a particular defendant if that defendant owed a legal duty to the plaintiff, breached that duty, and plaintiff suffered some injury as a result. See Sullivan v. Chief Justice for Admin. & Mgmt. of the Trial Court, 448 Mass. 15, 22-23 (2007). Standing is a question of subject matter jurisdiction.  Indeck Maine Energy, LLC
v. Commissioner of Energy Resources, 454 Mass. 511, 516 (2009).
This fraud claim is based on allegations that Syed convinced Boston Meridian to invest $300,000 in a company called Veristorm, and that he did so at least in
 
                                                            -6-
 
part by misrepresenting the finances and business prospects of Veristorm and by not disclosing that Syed had personally invested $900,000 in the company.
The subscription agreement that Boston Meridian returned to Veristorm reveals that Boston Meridian was not the entity that made the investment, however. Instead, the $300,000 investment described in the counterclaims was actually made by BMP Capital Partners LLC.
Since Boston Meridian did not make this investment, and therefore could not have suffered any harm because of the alleged fraud, it lacks standing to press this claim. See Pugsley v. Police Dept. of Boston, 472 Mass. 367, 372–373 (2015).
PredictSoft and Syed provided copies of the executed subscription agreement and associated promissory note, and the email (on which Syed was copied) by which Boston Meridian returned these executed documents to Veristorm. These documents show that BMP Capital Partners LLC, not Boston Meridian, made this investment in Veristorm. Boston Meridian does not contest the authenticity the email or the attachments.
The Court may consider these documents in deciding the motion for judgment on the pleadings as to Count IV because the challenge to Boston Meridian’s standing to press this claim goes to the Court’s subject matter jurisdiction. Since standing is “a component of subject matter jurisdiction,” a party may challenge and a judge may consider standing “under rule 12(b)(1) at any time.” Abate v. Fremont Inv. & Loan, 470 Mass. 821, 828 (2015). “[I]f a party raises an issue as to the court’s subject matter jurisdiction on a motion for a judgment on the pleadings, the … judge will treat the motion as if it had been brought under Rule 12(b)(1).” San Luis Unit Food Producers v. United States, 772 F.Supp.2d 1210, 1218 (E.D. Cal. 2011), quoting 5C Wright & Miller, Fed. Prac. and Proc. § 1367 (3d ed. 2004).[8] As a result, “in evaluating a motion for judgment on the pleadings in which a party challenges subject-matter jurisdiction, the Court may look beyond the pleadings and consider extrinsic evidence.” Innovative Sports Mgmt., Inc. v. Robles, 2014 WL 129308, at * 2 (N.D. Cal. Jan. 14, 2014).
 
--------------------------------------------
 
[8] Judicial construction of the Federal Rules of Civil Procedure also applies to parallel Massachusetts rules, “absent compelling reasons to the contrary or significant  differences  in  content.”  Smaland  Beach  Ass’n,  Inc.  v.  Genova, 461 Mass. 214, 228 (2012), quoting Strom v. American Honda Motor Co., 423 Mass. 330, 335 (1996), and Rollins Envtl. Servs., Inc., v. Superior Court, 368 Mass. 174, 180 (1975).
 
                                                            -7-
 
Boston Meridian’s insistence that the Court must accept all allegations in its counterclaims as true, and may not consider contrary evidence even in deciding whether Boston Meridian has standing to sue for fraud, is incorrect.
Where, as here, the defendant makes a “factual challenge to subject matter jurisdiction, the court is required to address the merits of the jurisdictional claim by resolving any factual disputes between the plaintiff and the defendant.” Wooten v. Crayton, 66 Mass. App. Ct. 187, 190 n.6 (2006). To do so the Court “may consider documents and other materials outside the pleadings.” Audoire v. Clients’ Security Bd., 450 Mass. 388, 390 n.4 (2008); Callahan v. First Congregational Church of Haverhill, 441 Mass. 699, 710 (2004).
If a motion seeking dismissal for lack of subject matter jurisdiction is not supported by any evidence, and instead “presents a ‘facial attack’ based solely on the allegations of the complaint,” then the court must assume that those allegations are true for the purpose of deciding whether it has subject matter jurisdiction to resolve the claim. Callahan, 441 Mass. at 709, quoting Hiles v. Episcopal Diocese of Mass., 437 Mass. 505, 516 n.13 (2002).
But a defendant-in-counterclaim may instead submit “documents and other materials outside the pleadings,” including materials “that are not affidavits,” in an attempt to “contest the accuracy (rather than the sufficiency) of the jurisdictional facts pleaded by the plaintiff.” Callahan, supra, at 710–711. Where, as here, the defendants-in-counterclaim make such a “factual challenge” to subject matter jurisdiction, the court must “address the merits of the jurisdictional claim by resolving the factual disputes between the plaintiff and the defendants.” Id. at 711. Under these circumstances the factual allegations in the counterclaims are not presumed to be true. Id.; Pishev v. City of Somerville, 95 Mass. App. Ct. 678, 682 (2019). Instead, the party asserting the claim “bears the burden of proving jurisdictional facts to support each of [its] claims,” and the evidence submitted regarding subject matter jurisdiction is “not viewed in the light most favorable to the non-moving party.” Wooten, 66 Mass. App. Ct. at 190 n.6.
Boston Meridian has made no attempt to rebut the evidentiary showing that it lacks standing to press any claim concerning the Veristorm investment. The Court will therefore dismiss Count IV without prejudice. “Dismissals for lack of subject matter jurisdiction are ordinarily without prejudice because dismissal for lack of jurisdiction is typically not an adjudication on the merits.”
 
                                                            -8-
 
Abate v. Fremont Inv. & Loan, 470 Mass. 821, 836 (2015); accord Bevilacqua v. Roberts, 460 Mass. 762, 779–780 (2011).
5. Tortious Interference—Count V. Boston Meridian also claims that PredictSoft and Syed tortiously interfered with an existing or anticipated future business relationship between Boston Meridian and jSonar.
“The tort of intentional interference with advantageous relations protects a plaintiff's present and future economic interests from wrongful interference.” Blackstone v. Cashman, 448 Mass. 255, 259 (2007).
To state a viable claim under this theory, Boston Meridian would have to allege facts plausibly suggesting that (i) Boston Meridian had or reasonably expected to have an advantageous relationship with jSonar, (ii) PredictSoft and Syed “knowingly induced a breaking of the relationship,” (iii) the interference, “in addition  to  being  intentional,   was   improper   in  motive  or   means,”   and (iv) Boston  Meridian  suffered  harm  as  a  result.   Columbia  Plaza  Assocs.  v. Northeastern Univ., 493 Mass. 570, 588 (2024), quoting Blackstone, supra, at 260. This claim fails for two reasons.
First, Boston Meridian does not allege that jSonar broke off or declined to enter into a business relationship with Boston Meridian. To the contrary, it alleges that jSonar retained Boston Meridian and paid it $50,000 for its work on the sale of jSonar to another company. Boston Meridian has not cited and the Court has not found any appellate case law suggesting that a claim for tortious interference may be based on an allegation that the plaintiff earned less from a business deal than it would have but for defendant’s alleged interference in an advantageous business relationship.
Second, the factual allegations by Boston Meridian do not plausibly suggest that the alleged interference was improper in motive or in means.
The counterclaims allege that PredictSoft and Syed were looking out for their own economic interests in their dealings with jSonar. But “advancing one’s own economic interest, by itself, is not an improper motive” for the purpose of a tortious interference claim. See Skyhook Wireless, Inc. v. Google Inc., 86 Mass. App. Ct. 611, 621 (2014); accord, e.g., United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 817 (1990); Brewster Wallcovering Co. v. Blue Mountain Wallcoverings, Inc., 68 Mass. App. Ct. 582, 608 & 609 (2007); Pembroke Country Club, Inc. v. Regency Sav. Bank, F.S.B., 62 Mass. App. Ct. 34, 39 (2004). Boston Meridian makes no allegations suggesting any other, improper motive.
 
                                                            -9-
 
To state a claim for tortious interference based on “improper means,” Boston Meridian must allege facts plausibly suggesting that PredictSoft and Syed engaged in “improper conduct beyond the fact of the interference itself.” Bartle v. Berry, 80 Mass. App. Ct. 372, 380 (2011). It has failed to do so.
Though Boston Meridian alleges that Syed cut his own deal to provide jSonar with advisory services in exchange for valuable stock options, such lawful conduct does not constitute “improper means.” See United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 815–816 (1990); Baystate Fin. Services, LLC v. Pinto, Suffolk Sup. Ct. no. 2084CV02507, 2021 WL 1222229, at *6 (Feb. 18, 2021) (Gordon, J.); National Econ. Research Assocs. v. Evans, Suffolk Sup. Ct. no. 0484CV02618-BLS1, 24 Mass. L. Rep. 436, 2008 WL 4352600, at *10 (Sept. 10, 2008) (Gants, J.); see also Curtis v. Herb Chambers I-95, Inc., 458 Mass. 674, 681 (2011) (alleged interference by copying advertising designs would be improper means only if plaintiff had legal right or entitlement to the designs).
In sum, “[p]ursuit of a legitimate business interest, without more, fails to quality as an improper means or motive” for purposes of asserting a tortious interference claim. Synergistics Technology, Inc. v. Putnam Investments, LLC, 74 Mass. App. Ct. 686, 690, rev. denied, 455 Mass. 1102 (2009) (reversing denial of motion for judgment notwithstanding the verdict).
6. G.L. c. 93A—Count VI. The Court’s analysis of the other counterclaims establishes that Boston Meridian has also failed to state a viable claim under G.L. c. 93A, § 11.
To the extent that the c. 93A is derivative of Boston Meridian’s claims for breach of contract, fraud, or tortious interference, the c. 93A claim fails because the underlying claims all fail as a matter of law. See Park Drive Towing, Inc. v. City of Revere, 442 Mass. 80, 85–86 (2004) (where c. 93A claim is based on and derivative of some underlying claim that fails as a matter of law, that 93A claim “must also fail”); Macoviak v. Chase Home Mortgage Corp., 40 Mass. App. Ct. 755, 760, rev. denied, 423 Mass. 1109 (1996) ©. 93A claim “necessarily fail[s]” where it “is solely based upon … underlying claim for common law” tort and that tort claim fails as a matter of law); see also Pembroke Country Club, Inc. v. Regency Savings Bank, F.S.B., 62 Mass. App. Ct. 34, 40-41 (2004) (where c. 93A claim is “wholly derivative” of tortious interference claim, evidence insufficient to establish that claim is likewise insufficient to establish violation of c. 93A); Frohberg v. Merrimack Mut. Fire Ins. Co., 34 Mass. App. Ct 462, 465 (1993) ©. 93A
 
                                                            -10-
 
claim properly dismissed where it is based solely on “legally unsupportable” claim for breach of contract).
To the extent that its c. 93A claim is based on its allegations regarding Veristorm, Boston Meridian lacks standing to press that part of this claim for the reasons discussed in § 4 of this decision, above.
And if Blood Meridian is contending that it was harmed by losing business to competition by PredictSoft, that fails to state an unfair trade practices claim. Merely competing to convince customers to do business with a different company is perfectly legal and does not violate c. 93A. See Synergistics Technology, 74 Mass. App. Ct. at 689–691.
7. Alter Ego Liability—Count VII. Boston Meridian’s final counterclaim alleges that “PredictSoft is Mr. Syed’s alter ego,” that Syed “has misused the corporate form to perpetrate fraud and other wrongful conduct on Boston Meridian,” and that therefore “any liabilities attributable to PredictSoft” may be “collected from Mr. Syed.”
In other words, Boston Meridian seeks to pierce the corporate veil of PredictSoft, disregard its corporate form, and impose on Syed full responsibility for any wrongdoing by PredictSoft. See generally Jinks v. Credico (USA) LLC, 488 Mass. 691, 697 (2021).
“Litigants attempt to pierce a corporate veil as a ‘means of imposing liability on an underlying cause of action such as a tort or breach of contract.’ ” Kraft Power Corp. v. Merrill, 464 Mass. 145, 149 (2013), quoting 1 W.M. Fletcher, Fletcher Cyclopedia of the Law of Corporations § 41.10 (rev. ed. 2006).
For example, “[t]he corporate veil ‘may be pierced where’ the corporate principal exercises (1) ‘some form of pervasive control’ over the activities of the corporation, and (2) ‘there is some fraudulent or injurious consequence’ as a result.” Kraft Power, supra at 152, quoting My Bread Baking Co. v. Cumberland Farms, Inc., 353 Mass. 614, 619 (1968).
“[T]he doctrine of corporate disregard,” i.e. piercing the veil, “is not a cause of action but an equitable doctrine by which an act or obligation of a corporation giving rise to a cause of action may be charged to a principle of the corporation….” Lipsitt v. Plaud, 466 Mass. 240, 253 n.14 (2013), quoting Kraft Power, 464 Mass. at 146. It may be used “only so long as the underlying claims survive.” Kraft Power, supra, at 149 n.6.
                                                            -11-
 
Since Boston Meridian’s other counterclaims all fail to state a claim upon which relief may be granted or fail for lack of standing, meaning that none of the underlying claims have survived, the veil-piercing claim against Mr. Syed must be dismissed as well. See Id.; Krawiec v. Manly, 811 S.E.2d 542, 552 (N.C. 2018) (doctrine of piercing corporate veil “is rendered inapposite when, as here, all underlying claims have been or should be dismissed”).
ORDER
The motion by PredictSoft, Inc., and Saqib Syed for judgment on the pleadings as to Boston Meridian, LLC’s counterclaims against them is allowed. When final judgment enters, it shall dismiss the counterclaim for fraud in count IV without prejudice, and shall dismiss the other counterclaims with prejudice.
A Rule 16 scheduling conference will be held on July 2, 2024, at 2:00 p.m. to discuss the status of this litigation, the setting of a firm deadline for completing discovery, whether any party plans to move for summary judgment and, if not, the scheduling of a final pretrial conference.