NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-1201

AMGAD MUKHTAR & others[1]

vs.

MAURA HEALEY[2] & others.[3]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiffs appeal from a judgment issued by a Superior Court judge dismissing their complaint alleging that numerous Massachusetts firearm licensing statutes and other laws are unconstitutional. Like the motion judge, we conclude that the

---

[1] Robert Egri, Katalin Egri, Michael Bush, Edward Chisholm, Vincent Cedrone, Phillip McLaine, and Joshua Ulrich.

[2] Governor of the Commonwealth of Massachusetts, in her official and individual capacities.

[3] Andrea Joy Campbell, Attorney General of the Commonwealth of Massachusetts, in her official and individual capacities; Geoffrey D. Noble, Colonel of the Massachusetts State Police, in his official capacity; Jordan Maynard, Chair of the Massachusetts Gaming Commission, in his official and individual capacities; Terrence M. Reidy, Secretary of the Executive Office of Public Safety and Security, in his official and individual capacities; and the Massachusetts Port Authority, intervener.

plaintiffs failed to establish standing to challenge any of the laws except for the licensing fee. Further concluding that binding Supreme Judicial Court precedent forecloses the challenge to the licensing fee, we affirm.

1. Standard of review. "We review de novo the dismissal of a complaint under either rule 12 (b) (1) or (6)." Hladik v. LPL Fin. LLC, 106 Mass. App. Ct. 592, 594 (2026).[4] "Where a party's challenge [to standing] is supported by affidavits or other matters outside the record, the challenge is factual and the burden falls to the nonmoving party to prove jurisdictional facts." Id. at 595. By contrast, where the challenge is unsupported by matters outside the complaint, the allegations of the complaint are "taken as true for purposes of resolving the complaint." Hiles v. Episcopal Diocese of Mass., 437 Mass. 505, 516 n.13 (2002). Here, the defendants presented extrinsic evidence regarding only the Firearms Control Advisory Board. In reviewing whether a complaint fails to state a claim upon which relief can be granted, we invariably "accept the allegations in the complaint as true and draw 'all reasonable inferences in the plaintiff[s'] favor.'" Allegaert v. Harbor View Hotel Owner LLC, 100 Mass. App. Ct. 483, 486 (2021), quoting Baptiste v.

_____

[4] Because we review the dismissal de novo, the alleged procedural irregularities in the Superior Court are immaterial.

2

Executive Office of Health & Human Servs., 97 Mass. App. Ct. 110, 114 (2020), cert. denied, 141 S. Ct. 2626 (2021).

2. Standing. "A party has standing when it can allege an injury within the area of concern of the statute, regulatory scheme, or constitutional guarantee under which the injurious action has occurred." Gibson v. Department of Correction, 106 Mass. App. Ct. 201, 206 (2025), quoting Doe No. 1 v. Secretary of Educ., 479 Mass. 375, 386 (2018). "Simply alleging injury alone is not sufficient and '[i]njuries that are speculative, remote, and indirect' do not confer proper standing." Pugsley v. Police Dep't of Boston, 472 Mass. 367, 371 (2015), quoting Sullivan v. Chief Justice for Admin. & Mgt. of the Trial Court, 448 Mass. 15, 21 (2006).

Here, the plaintiffs allege that they would act in various ways currently prohibited by law were it not for those laws. Each such allegation is conclusory. For example, the plaintiffs allege that they "would bear arms on the property of and in schools, colleges, and universities were it not for M.G.L. Chapter 269 § 10(j)," and that they "have each been on the property of and in schools, colleges, and universities multiple times and intend to continue doing so." Nowhere in their complaint do the plaintiffs provide any plan to act in these

3

ways, state which institutions they intend to visit, or explain why they so desire to visit them while armed.

It is, of course, true that "when fear of criminal prosecution under an allegedly unconstitutional statute is not imaginary or wholly speculative a plaintiff need not 'first expose himself to actual arrest or prosecution to be entitled to challenge [the] statute.'" Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 302 (1979), quoting Steffel v. Thompson, 415 U.S. 452, 459 (1974). Nonetheless, the plaintiffs must produce factual allegations that raise their assertion of standing beyond the speculative. The sort of boilerplate attempt to manufacture standing by ipse dixit attempted here is not permitted. As the United States Supreme Court explained, "'some day' intentions -- without any description of concrete plans, or indeed even any specification of when the some day will be -- do not support a finding of the 'actual or imminent' injury that our cases require." Lujan v. Defenders of Wildlife, 504 U.S. 555, 564 (1992). The standing analysis concerns itself with whether the plaintiffs actually face an imminent injury, not whether they can recite the magic words in their complaint. Similarly, it is hardly fair to the future plaintiff with potentially an actual need, for instance, to bring a firearm into a municipal building (for example, a municipal employee

4

with a dangerous ex-lover) to allow the legality of this prohibition to be litigated by litigants without a concrete stake in the question to be litigated.

The case relied upon by the plaintiffs, Susan B. Anthony List v. Driehaus, 573 U.S. 149 (2014), is in accord. There, "[b]oth petitioners ha[d] pleaded specific statements they intend[ed] to make in future election cycles," and supported these specific statements with examples of "substantially similar activity" in the past. Id. at 161. Unlike the petitioners in Susan B. Anthony List, the plaintiffs here have provided no specific averments. The motion judge properly determined that they lack standing to raise any of their claims except for their challenge to the licensing fee.

3. Licensing fee. Except for Kaitin Egri, each of the plaintiffs has a license to carry firearms and thus has been directly harmed by the $100 fee to obtain a license to carry. See G. L. c. 140, § 121F (o) (i). The Supreme Judicial Court has held that a licensing scheme with reasonable processing delays and fees is consistent with the Second Amendment. See Commonwealth v. Marquis, 495 Mass. 434, 458-459 (2025), cert. denied, 223 L. Ed. 2d 520 (2026). This is consistent with the United States Supreme Court's statement in dicta that such licensing schemes are constitutional unless "lengthy wait times

5

in processing license applications or exorbitant fees deny ordinary citizens their right to public carry." New York State Rifle & Pistol Ass'n v. Bruen, 597 U.S. 1, 38 n.9 (2022). It is true, as the plaintiffs point out, that the Supreme Judicial Court was considering the fee imposed on nonresident applicants, but we can see no reason why that would make a constitutional difference.[5]

Finally, the plaintiffs assert that a violation of equal protection arises from the reduced or waived fees provided to certain government officials, gunsmiths, and elderly persons. They provide no argument -- nor do we envision any -- that there is no rational basis for these reasonable exemptions. Rather, they argue that strict scrutiny is required "whenever a fundamental right is implicated." This is not so. Rather, "strict scrutiny applies only where State action 'significantly interfere[s] with' the fundamental right at issue,' not simply where State action involves a fundamental right (citations omitted)." Commonwealth v. Roman, 489 Mass. 81, 87 (2022). The plaintiffs make no argument -- nor could they -- that the $100

---

[5] The plaintiffs also state that they are preserving the issue whether Marquis was properly decided for review by the Supreme Judicial Court, presumably on further appellate review. We acknowledge that this claim was fully raised here. We, of course, are bound to follow the law as set forth by the Supreme Judicial Court. See Commonwealth v. Colon, 52 Mass. App. Ct. 725, 730 n.1 (2001).

fee significantly interferes with the fundamental right to bear arms. Accordingly, the motion judge properly concluded that the plaintiffs' complaint on this point failed to state a claim upon which relief could be granted.[6]

Judgment affirmed.

By the Court (Shin, Ditkoff &
   Tan, JJ.[7]),

Clerk

Entered:  June 5, 2026.

---

[6] The plaintiffs argue in passing that the motion judge should have granted them leave to amend their complaint. Denials of such motions are reviewed for an abuse of discretion. See Chang v. Winklevoss, 95 Mass. App. Ct. 202, 212 (2019).  A motion to amend must attach a proposed complaint or "describe[] the proposed amendment in enough detail to meet the notice pleading requirement."  Williamson v. Barlam, 103 Mass. App. Ct. 727, 737 (2024).  Accord Johnston v. Box, 453 Mass. 569, 582 (2009).  Here, the plaintiffs provided no description of any proposed amendments but rather asked the court to identify how they should amend their complaint.  The motion judge acted within his discretion in declining this invitation.

[7] The panelists are listed in order of seniority.